# FEDERAL TRADE COMMISSION *v.* MINNE-APOLIS-HONEYWELL REGULATOR CO.

No. 11.   Argued October 15–16, 1952.—Decided December 22, 1952.

*Acting Solicitor General Stern* argued the cause for petitioner. With him on the brief were *Acting Assistant Attorney General Clapp, Daniel M. Friedman, W. T. Kelley* and *Robert B. Dawkins.*

*Albert R. Connelly* argued the cause for respondent. With him on the brief was *Will Freeman.*

MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

The initial question in this case is one of jurisdiction—whether the petition for certiorari was filed within the period allowed by law.[1] We hold that it was not.

The cause grows out of a proceeding initiated by petitioner, the Federal Trade Commission, in 1943. At that time, the Commission issued a three-count complaint against respondent. Count I charged a violation of § 5 of the Federal Trade Commission Act;[2] Count II charged a violation of § 3 of the Clayton Act;[3] Count III dealt with an alleged violation of § 2 (a) of the Clayton Act as amended by the Robinson-Patman Act.[4] A protracted administrative proceeding followed. The Commission finally determined against respondent on all three counts,

---

[1] 28 U. S. C. § 2101 (c).

[2] 38 Stat. 719, 15 U. S. C. § 45.

[3] 38 Stat. 731, 15 U. S. C. § 14.

[4] 38 Stat. 730, as amended, 49 Stat. 1526, 15 U. S. C. § 13 (a).

and it issued a cease and desist order, in three parts, covering each of the three violations.

Respondent petitioned the Court of Appeals for the Seventh Circuit to review and set aside this order. The Commission sought enforcement of all parts of its order in a cross-petition.

Respondent abandoned completely its attack on Parts I and II of the order. In briefs and in oral argument, respondent made it clear that the legality of Part III was the only contested issue before the Court of Appeals. Neither party briefed or argued any question arising out of Parts I and II.

On July 5, 1951, the Court of Appeals announced its decision. The opinion stated that since respondent did not "challenge Parts I and II of the order based on the first two counts of the complaint we shall make no further reference to them." The court then went .on to hold that Part III of petitioner's order could not be sustained by substantial evidence and should be reversed. 191 F. 2d 786. On the same day, the court entered its judgment, the pertinent portion reading as follows:

> ". . . it is ordered and adjudged by this Court that Part III of the decision of the Federal Trade Commission entered in this cause on January 14, 1948, be, and the same is hereby, Reversed, and Count III of the complaint upon which it is based be, and the same is hereby Dismissed."

The Court of Appeals requires petitions for rehearing to be filed "within 15 days after entry of judgment." The Commission filed no such petition. On August 21, 1951, long after the expiration of this 15-day period, and after a certified copy of said judgment, in lieu of mandate, was issued, the Commission filed a memorandum with the court which reads in part as follows:

"On July 5, 1951 the Court entered its opinion and judgment reversing Part III of the decision of the Federal Trade Commission dated January 14, 1948 and dismissing Count III of the complaint upon which it is based. No disposition has been made of the Cross-Petition filed by the Commission for affirmance and enforcement of the entire decision. The Commission takes the position that its Cross-Petition should be in part sustained, i. e., to the extent that the Court should make and enter herein a decree affirming Parts I and II of the Commission's order to cease and desist and commanding Minneapolis-Honeywell Regulator Company to obey the same and comply therewith. . . .

. . . . .

"11. In its briefs filed herein the petitioner abandoned its attack upon Parts I and II of the order and challenged only the validity of Part III of the order (see page 1 of petitioner's brief dated March 15, 1951). Thus, petitioner concedes the validity of Parts I and II of the order and does not contest the prayer of the Commission's Cross-Petition and brief with respect to the affirmance and enforcement of Parts I and II of the order."

Clearly, by this memorandum the Commission sought no alteration of the judgment relative to Part III; in fact, it acknowledged the entry of judgment reversing Part III on July 5, 1951. It did not even claim it to be a petition for rehearing. It was submitted that Parts I and II of the order were uncontested, and "In conclusion . . . submitted that the Court should make and enter . . . a decree affirming and enforcing Parts I and II of the Commission's order to cease and desist."

On September 18, 1951, the Court of Appeals issued what it called its "Final Decree." Again the court

"ordered, adjudged and decreed" that Part III of the Commission's order "is hereby reversed and Count III of the complaint upon which it is based be and the same is hereby dismissed." The court then went on to affirm Parts I and II, and it entered a judgment providing for their enforcement, after reciting again that there was no contest over this phase of the order.

On December 14, 1951, the Commission filed its petition for certiorari. Obviously, the petition was out of time unless the ninety-day filing period began to run anew from the second judgment entered on September 18, 1951. In our order granting certiorari, 342 U. S. 940, we asked counsel to discuss the "timeliness of the application for the writ."

Petitioner refers us to cases which have held that when a court considers on its merits an untimely petition for a rehearing, or an untimely motion to amend matters of substance in a judgment, the time for appeal may begin to run anew from the date on which the court disposed of the untimely application.[5]

Petitioner apparently would equate its memorandum of August 21, 1951, with an untimely petition for a rehearing affecting Part III. But certainly its language and every inference therein is to the contrary. When petitioner filed its memorandum, the time for seeking a rehearing had long since expired.

Moreover, the memorandum was labeled neither as a petition for a rehearing nor as a motion to amend the previous judgment, and in no manner did it purport to seek such relief. On the contrary, the Commission indicated that it was quite content to let the Court of Appeals' decision of July 5 stand undisturbed. Since we cannot

---

[5] *Pfister* v. *Finance Corp.*, 317 U. S. 144, 149 (1942); *Bowman* v. *Loperena*, 311 U. S. 262, 266 (1940); *Wayne United Gas Co.* v. *Owens-Illinois Co.*, 300 U. S. 131, 137–138 (1937).

treat the memorandum of August 21 as petitioner would have us treat it, we cannot hold that the time for filing a petition for certiorari was enlarged simply because this paper may have prompted the court below to take some further action which had no effect on the merits of the decision that we are now asked to review in the petition for certiorari.

Petitioner tells us that the application must be deemed to be in time because "when a court actually changes its judgment, the time to appeal or petition begins to run anew irrespective of whether a petition for rehearing has been filed." [6] We think petitioner's interpretation of our decisions is too liberal.

While it may be true that the Court of Appeals had the power to supersede the judgment of July 5 with a new one,[7] it is also true, as that court itself has recognized, that the time within which a losing party must seek review cannot be enlarged just because the lower court in its discretion thinks it should be enlarged.[8] Thus, the mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought.[9] Only when the lower court changes matters of substance,[10] or resolves a genuine ambiguity,[11] in a judgment previously rendered should the period within which an appeal must be taken or a petition for certiorari filed begin to run

---

[6] Brief for petitioner, p. 43.

[7] 28 U. S. C. § 452; see *Zimmern* v. *United States*, 298 U. S. 167 (1936).

[8] See *Fine* v. *Paramount Pictures*, 181 F. 2d 300, 304 (1950).

[9] *Department of Banking* v. *Pink*, 317 U. S. 264 (1942); *Toledo Scale Co.* v. *Computing Scale Co.*, 261 U. S. 399 (1923); *Credit Co., Ltd.* v. *Arkansas Central R. Co.*, 128 U. S. 258 (1888).

[10] See *Zimmern* v. *United States*, 298 U. S. 167, 169 (1936); compare *Department of Banking* v. *Pink, supra*.

[11] Compare *Federal Power Commission* v. *Idaho Power Co.*, 344 U. S. 17 (1952).

anew. The test is a practical one. The question is whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality.[12]

The judgment of September 18, which petitioner now seeks to have us review, does not meet this test. It reiterated, without change, everything which had been decided on July 5. Since the one controversy between the parties related only to the matters which had been adjudicated on July 5, we cannot ascribe any significance, as far as timeliness is concerned, to the later judgment.[13]

Petitioner puts great emphasis on the fact that the judgment of September 18 was labeled a "Final Decree" by the Court of Appeals, whereas the word "Final" was missing from the judgment entered on July 5. But we think the question of whether the time for petitioning for certiorari was to be enlarged cannot turn on the adjective which the court below chose to use in the caption of its second judgment. Indeed, the judgment of July 5

---

[12] Compare *Rubber Co.* v. *Goodyear,* 6 Wall. 153 (1868) (appeal allowed from a second decree, restating most provisions of the first because the first decree, at the time of entry, was only regarded by the parties and the court as tentative); *Memphis* v. *Brown,* 94 U. S. 715 (1877) (appeal allowed from second judgment on the ground that the second made material changes in the first). See *United States* v. *Hark,* 320 U. S. 531, 533–534 (1944); *Hill* v. *Hawes,* 320 U. S. 520, 523 (1944).

[13] The suggestion is made that the September 18 judgment injected a new controversy into the litigation—the question of whether the Court of Appeals had the power to affirm and enforce the Commission's order after it had cross-petitioned for such relief. Cf. *Federal Trade Commission* v. *Ruberoid Co.,* 343 U. S. 470 (1952). But if the respondent had sought to contest that issue, it could have done so from the start, by raising objections to enforcement of all parts of the Commission's cross-petition. Instead, respondent refused to contest these parts of the Commission's order. Having done so, it removed the question involved in the *Ruberoid* case from this case.

was for all purposes final. It put to rest the questions which the parties had litigated in the Court of Appeals. It was neither "tentative, informal nor incomplete." [14] Consequently, we cannot accept the Commission's view that a decision against it on the time question will constitute an invitation to other litigants to seek piecemeal review in this Court in the future.

Thus, while we do not mean to encourage applications for piecemeal review by today's decision, we do mean to encourage applicants to this Court to take heed of another principle—the principle that litigation must at some definite point be brought to an end.[15] It is a principle reflected in the statutes which limit our appellate jurisdiction to those cases where review is sought within a prescribed period. Those statutes are not to be applied so as to permit a tolling of their time limitations because some event occurred in the lower court after judgment was rendered which is of no import to the matters to be dealt with on review.

Accordingly, the writ of certiorari is

*Dismissed.*

MR. JUSTICE BLACK, dissenting.

The end result of what the Court does today is to leave standing a Court of Appeals decree which I think is so clearly wrong that it could well be reversed without argument. The decree set aside an order of the Federal Trade Commission directing Minneapolis-Honeywell to stop violating § 2 (a) of the Robinson-Patman Act by selling oil burner controls to some customers cheaper than to others. The Court of Appeals not only set aside the Commission's order as permitted under some circumstances. It went much further and ordered the Commis-

---

[14] See *Dickinson* v. *Petroleum Conversion Corp.*, 338 U. S. 507, 514 (1950).

[15] See *Matton Steamboat Co.* v. *Murphy*, 319 U. S. 412, 415 (1943).

sion to dismiss Count III of the complaint against Minneapolis-Honeywell. In doing so the Court of Appeals invaded an area which Congress has made the exclusive concern of the Federal Trade Commission. See *Federal Trade Commission* v. *Morton Salt Co.*, 334 U. S. 37, 55; *Federal Power Commission* v. *Idaho Power Co.*, 344 U. S. 17, 20; *Federal Communications Commission* v. *Pottsville Broadcasting Co.*, 309 U. S. 134, 145–146.

Moreover, the Court of Appeals held that there was no evidence at all to substantiate the Commission finding that a quantity discount pricing system of Minneapolis-Honeywell resulted in price discriminations that violated § 2 (a) of the Robinson-Patman Act. But there was evidence before the Commission that some customers of Minneapolis-Honeywell were given substantially bigger discounts on purchases than those given their competitors. And the Commission found that these variations were not justified by any differences in costs of manufacture, sale or delivery. We have emphasized that such a showing amply supports a Commission cease and desist order. *Federal Trade Commission* v. *Morton Salt Co.*, 334 U. S. 37, 47. The Court of Appeals here failed to follow our holding in the *Morton Salt* case. For this reason also it should be reversed.

I think the following facts show that the petition for certiorari here was filed in time. The Court of Appeals was petitioned by Minneapolis-Honeywell to review and set aside a Trade Commission order in its entirety. Later Minneapolis-Honeywell apparently conceded validity of part of the order and the court's first decree of July 5, 1951, failed to pass on all the provisions of the Commission's order.[1] The Commission had ninety days to ask

---

[1] See, *e. g.*, "Though the merits of the cause may have been substantially decided, while any thing, though merely formal, remains to be done, this Court cannot pass upon the subject. If from any

that we review that partial order if it was a "final" one. Within that ninety days, on August 21, 1951, the Commission asked the Court of Appeals to pass on the remainder of the order. In response a new and expanded decree of the Court of Appeals came down September 18, 1951, marked "Final Decree." December 14, 1951, within ninety days after rendition of this "Final Decree," the Commission filed here its petition for certiorari which the Court now dismisses.

I think that no statute, precedent or reason relied on by the Court requires dismissal of this cause. Of course appealability of a judgment depends on its being "final" in the legalistic sense. But there is no more ambiguous word in all the legal lexicon.[2] The Court of Appeals thought its second not its first decree was "final." Counsel for the Commission evidently believed the second judgment was the "final" one. I am confident many lawyers would have thought the same under this Court's former cases. So I would have viewed the second judgment before today's holding. Former cases would have

intermediate stage in the proceedings an appeal might be taken to the Supreme Court, the appeal might be repeated to the great oppression of the parties." Mr. Chief Justice Marshall speaking for the Court in *Life & Fire Ins. Co. of New York* v. *Adams,* 9 Pet. 573, 602 (1835). "We think that the decree is not a final decree, and that this court has no jurisdiction of the appeal. The decree is not final, because it does not dispose of the entire controversy between the parties." *Keystone Iron Co.* v. *Martin,* 132 U. S. 91, 93 (1889). "It is the settled practice of this court, and the same in the King's Bench in England, that the writ will not lie until the whole of the matters in controversy in the suit below are disposed of. . . . The cause is not to be sent up in fragments." *Holcombe* v. *McKusick,* 20 How. 552, 554 (1858).

[2] "Probably no question of equity practice has been the subject of more frequent discussion in this court than the finality of decrees. . . . The cases, it must be conceded, are not altogether harmonious." *McGourkey* v. *Toledo & Ohio R. Co.,* 146 U. S. 536, 544–545. Cf. *Dickinson* v. *Petroleum Conversion Corp.,* 338 U. S. 507, 511.

pointed strongly to rejection of appeal from the incomplete first decree as an attempted "piecemeal" review.[3]

The majority advances logical and rational grounds for its conclusion that the first judgment rather than the second one was "final." That the second judgment was "final," legalistically speaking, is equally supportable by logic, reason and precedent, if not more so.[4] But in arguing over "finality" we should not ignore the fact that Congress has declared that this type of proceeding should be reviewable both in the Court of Appeals and here. We frustrate that declaration when review is denied a

---

[3] A multitude of cases would have supported such a belief on the part of Commission counsel. See, e. g., Note 1 and the following: "But piecemeal appeals have never been encouraged." *Morgantown* v. *Royal Ins. Co.,* 337 U. S. 254, 258. "Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration." *Cobbledick* v. *United States,* 309 U. S. 323, 325. "The foundation of this policy is not in merely technical conceptions of 'finality.' It is one against piecemeal litigation. 'The case is not to be sent up in fragments. . . .' *Luxton* v. *North River Bridge Co.,* 147 U. S. 337, 341." *Catlin* v. *United States,* 324 U. S. 229, 233–234.

[4] "Upon these facts we cannot doubt that the entry of the 28th of November was intended as an order settling the terms of the decree to be entered thereafter; and that the entry made on the 5th of December was regarded both by the court and the counsel as the final decree in the cause.

"We do not question that the first entry had all the essential elements of a final decree, and if it had been followed by no other action of the court, might very properly have been treated as such. But we must be governed by the obvious intent of the Circuit Court, apparent on the face of the proceedings. We must hold, therefore, the decree of the 5th of December to be the final decree." *Rubber Company* v. *Goodyear,* 6 Wall. 153, 155–156 (1868). See also *Federal Power Commission* v. *Idaho Power Co.,* 344 U. S. 17, 20–21; *Hill* v. *Hawes,* 320 U. S. 520; *United States* v. *Hark,* 320 U. S. 531; *Zimmern* v. *United States,* 298 U. S. 167; *Memphis* v. *Brown,* 94 U. S. 715.

litigant because of his failure to guess right when confronted in August 1951 with a puzzle, the answer to which no one could know until today.

In prior cases cited in the Court's opinion this Court has found ways to grant review to litigants bedeviled and confused by the judicially created fog of "finality." [5] In those prior cases the Court recognized the vagueness of the finality rule and refused to throw out of court litigants who had acted bona fide. It is unfortunate that the Court today fails to utilize this same kind of judicial ingenuity to afford this litigant the review Congress saw fit to provide in the public interest.

The proceedings against Minneapolis-Honeywell began before the Commission nine years ago. Sixteen hundred pages of evidence were put on the record. It all goes to nought apparently because Commission counsel lacked sufficient clairvoyance to anticipate that this Court would hold that the July judgment rather than the one in September was final. Rules of practice and procedure should be used to promote the ends of justice, not to defeat them.[6]

MR. JUSTICE DOUGLAS, dissenting.

While I do not believe the merits of the case are as clear as MR. JUSTICE BLACK indicates, I join in the parts of his opinion which deal with the question whether the petition for certiorari was timely under 28 U. S. C. § 2101 (c).

---

[5] See cases cited in Note 4.

[6] *Hormel* v. *Helvering,* 312 U. S. 552, 557. See also *Maty* v. *Grasselli Chemical Co.,* 303 U. S. 197, 200–201. Cf. *Hazel-Atlas Co.* v. *Hartford-Empire Co.,* 322 U. S. 238.