455 F.3d 125
 MARTHA GRAHAM SCHOOL AND DANCE FOUNDATION, INC., and Ronald Protas, individually and as Trustee of the Martha Graham Trust, Plaintiffs-Counter-Defendants-Appellants,
v.
MARTHA GRAHAM CENTER OF CONTEMPORARY DANCE, INC., and Martha Graham School Of Contemporary Dance, Inc., Defendants-Counterclaimants-Appellees,
Eliot L. Spitzer, Attorney General of the State of New York, Intervenor-Defendant-Appellee.
 Docket No. 05-3451-cv(L).
 Docket No. 05-3941-cv(CON).
 United States Court of Appeals, Second Circuit.
 Argued: April 18, 2006.
 Decided: July 11, 2006.
 
 1
 Peter B. Schalk, Judd Burstein, P.C., New York, NY, for Plaintiffs-Counter-Defendants-Appellants.
 
 
 2
 Katherine B. Forrest, Cravath, Swaine & Moore LLP, (Joanne M. Gentile, on the brief), New York, NY, for Defendants-Counterclaimants-Appellees.
 
 
 3
 Before JACOBS and B.D. PARKER, Circuit Judges; OBERDORFER, District Judge.*
 
 
 4
 LOUIS F. OBERDORFER, District Judge.
 
 
 5
 This case marks the third chapter in this court of the dispute as to who is the rightful owner of the works of the renowned modern dancer Martha Graham, who died in 1991 at the age of 96. Previously this court largely affirmed the district court ruling that during her lifetime Graham transferred the rights to almost all of her works to the Martha Graham Center, but remanded the question of ownership of seven specific dances. On remand, the district court denied plaintiffs' motion for a new trial and found that the Center also owns the seven dances. For reasons stated below, we affirm.
 
 I. Background and Procedural History[1]
 
 6
 Plaintiff-appellant Ronald Protas, Graham's close friend and confidant, was the sole heir of her estate and the Trustee of the Martha Graham Trust. The Trust holds and licenses intellectual property previously owned by Graham that Protas inherited from her. Plaintiff-appellant Martha Graham School and Dance Foundation (the "Foundation") was created by Protas (through the Trust) in 2000. Defendants-appellees Martha Graham Center of Contemporary Dance (the "Center") and Martha Graham School of Contemporary Dance (the "School") are nonprofit organizations created by Graham during her lifetime to operate her business. Graham, 224 F.Supp.2d at 569.
 
 
 7
 Following Graham's death, a dispute arose as to whether plaintiffs or defendants owned Graham's works. In January 2001, Protas and the Foundation sued the Center and the School for trademark and copyright infringement. Plaintiffs also sought a temporary restraining order to prevent the Center from using the name "Martha Graham." The Center counterclaimed for ownership of the trademarks, copyrights, and related sets of costumes, and for breach of fiduciary duty and damages. After a bench trial in early 2001, the district court denied the motion for a temporary restraining order and found that Graham had assigned her name to the Center. See The Martha Graham Sch. & Dance Found. v. Martha Graham Ctr. of Contemp. Dance, 153 F.Supp.2d 512, 514, 526-27 (S.D.N.Y.2001). This Court affirmed. See The Martha Graham Sch. & Dance Found. v. Martha Graham Ctr. of Contemp. Dance, 43 Fed.Appx. 408 (2nd Cir.2002).
 
 
 8
 On August 23, 2002, following a trial on ownership of the copyrights, the district court ruled that the Center owned the copyrights to 45 of the dances and Protas owned the copyright in one dance. See Graham, 224 F.Supp.2d at 569. In so ruling, the court relied on documentary evidence which demonstrated that the Center exercised control over Graham's dances. See id. at 573-74. It also credited the testimony of Jeanette Roosevelt and Edmund Pease, who were intricately involved with Graham and the Center. They testified that during her lifetime Graham assigned rights to these works to the Center. See id. Pease testified that (i) in 1974 he supervised an accounting of the assets of Graham and the Center; (ii) the Final Report of this accounting concluded that the Center's assets included Graham's sets, dances, and costumes; (iii) this Report was approved by the Center's Board of Directors; and (iv) Graham served on the Board, and voiced no objections to the Report. Id. Based in part on this testimony, the district court also held that defendants owned the original sets, costumes, and jewelry used in Graham's ballets. Id. at 605-08.
 
 
 9
 Protas appealed the district court's copyright ruling. In August 2004, this court largely affirmed the district court's opinion, but reversed and remanded on three specific issues. See The Martha Graham Sch. & Dance Found. v. Martha Graham Ctr. of Contemp. Dance, 380 F.3d 624 (2nd Cir.2004). This court affirmed the rulings that (i) Graham assigned her pre-1956 dances to the Center, and (ii) the dances created between 1966 and 1991 belonged to the Center as "works for hire" because the Center paid Graham to create these dances. This court also reversed the lower court's holding that a dance entitled "Acrobats of God" belonged to the Center. Finally, and most importantly for purposes of this appeal, this court vacated the district court's ruling that seven unpublished dances created by Graham from 1956 to 1965 (the "seven dances") were works for hire.[2] We held that the ownership of the seven dances was still unresolved, and accordingly remanded solely on the ownership issue. See id. at 638-39.
 
 
 10
 On May 2, 2005, two weeks before the scheduled evidentiary hearing on remand, Protas and the Foundation moved for a new trial and relief from the November 4, 2002 judgment on the basis of "newly discovered evidence" and fraud. See Fed. R.Civ.P. 60(b)(2) & (3). The district court denied that motion, deeming it "meritless" and "reckless." See Joint App. 858. The district court also ruled that additional evidence plaintiffs sought to introduce would not be considered because it did not specifically relate to the seven dances. See Joint App. 858-59. The district court excluded other documents on the ground that they were previously produced and not newly discovered. See id.
 
 
 11
 On June 23, 2005, the district court held that "[a] preponderance of the credible evidence shows that the common law copyrights in [the seven Dances] were assigned to the Center by Martha Graham." The Martha Graham Sch. & Dance Found. v. Martha Graham Ctr. of Contemp. Dance, 374 F.Supp.2d 355, 363 (S.D.N.Y.2005).
 
 II. Discussion
 
 12
 On appeal Protas argues that the district court abused its discretion in (1) denying plaintiffs' motion for a new trial; (2) excluding "newly discovered" evidence offered during the trial on remand; and (3) finding that the seven dances were assigned to the Center. We conclude that the district court did not abuse its discretion, and affirm its decision.
 
 A. Plaintiffs' New Trial Motion
 
 13
 A new trial motion may be granted so long as, inter alia, it is filed "not more than one year after the judgment ... was entered." Fed.R.Civ.P. 60(b)(3). The one-year limitation period for Rule 60(b) motions is "absolute." Warren v. Garvin, 219 F.3d 111, 114 (2nd Cir.2000) (internal quotations and citation omitted). Judgment in this case was entered on November 4, 2002, but plaintiffs' motion was not filed until May 2, 2005 — two and a half years later.
 
 
 14
 To defendants' argument that this motion was untimely, plaintiffs counter that the one-year period should be measured from the October 2004 decision of this court because it substantially changed the outcome of the case. In support, Protas and the Foundation cite Harduvel v. Gen. Dynamics Corp., which held that the one-year clock did not begin to run until after the judgment of the district court on remand, because the decision of the court of appeals had substantially changed the legal position of the party bringing the Rule 60(b) motion (i.e., the plaintiff). 801 F.Supp. 597, 602-03 (M.D.Fla.1992). Harduvel does not support the argument of Protas and the Foundation, because the Eleventh Circuit in Harduvel had reversed the judgment of the district court in favor of the plaintiff and remanded the entire case with instructions to enter judgment for the defendant. Id. at 600. Before the Eleventh Circuit reversed the judgment, the plaintiff, as the prevailing party, had no incentive (or legal basis) to move for a new trial. Here, by contrast, this court affirmed the district court's ruling with respect to all dances except the seven dances; the trial on remand and this appeal relate only to the seven dances. Protas and the Foundation now seek a new trial on those portions of the district court's 2002 ruling that we affirmed. Because we affirmed, our ruling made no substantive change in their legal position from that established by the judgment of the district court. See, e.g., U.S. Lines v. U.S. Lines Reorg. Trust, 262 B.R. 223, 239 (S.D.N.Y.2001) ("The timeliness of a Rule 60(b) motion depends on whether on appeal, the appellate court `has disturbed or revised legal rights and obligations which, by [the] prior judgment, had been plainly and properly settled with finality.'") (quoting Simon v. Navon, 116 F.3d 1, 3 (1st Cir.1997) (quoting FTC v. Minneapolis-Honeywell Regulator Co., 344 U.S. 206, 212, 73 S.Ct. 245, 97 L.Ed. 245 (1952))). Moreover, even if the legal position of Protas and the Foundation did change with respect to the seven dances, they already received a second opportunity — the trial on remand — to litigate the merits of that portion of their claims.
 
 
 15
 Because plaintiffs' motion for a new trial was untimely, we need not reach the merits of that motion.
 
 B. Exclusion of Evidence
 
 16
 Plaintiffs also allege that the district court improperly excluded evidence in determining ownership of the seven dances on remand. The district court's ruling excluding evidence may be reversed for abuse of discretion and if the ruling affected a party's substantial rights (i.e., was clearly prejudicial). Marcic v. Reinauer Transp. Cos., 397 F.3d 120, 124 (2nd Cir. 2005).
 
 
 17
 Protas contends that the district court abused its discretion in refusing to admit four documents: (1) January 1975 Board minutes of the Center; (2) the "Thomson Report"; (3) November 1982 Board minutes; and (4) a 1968 Ford Foundation document. Each of these items is discussed below.
 
 1. The January 1975 Minutes
 
 18
 The January 1975 Board minutes of the Center stated the following:
 
 
 19
 The Board moved to express a vote of thanks to Mr. Harold Kline [sic] who had arranged for Martha Graham to copywright [sic] her choreography without using Laban Notation (through the use of a film and a written synopsis) which he had done without remuneration out of admiration for Miss Graham. The motion was passed and Mr. Mason agreed to write to Mr. Kline.
 
 See Joint App. 261-65.[3]
 
 20
 There are at least two reasons why the January 1975 Minutes were properly excluded. First, the January 1975 minutes likely relate only to a different dance, "Cave of the Heart." See Joint App. 317-18. As the district court held and this court affirmed, Graham did not own "Cave of the Heart." See Graham, 224 F.Supp.2d at 595-96, aff'd 380 F.3d at 632 n. 10, 637 n. 25. That dance is no longer at issue in this case.
 
 
 21
 Second, as the district judge explained, on remand she limited her consideration to "additional ... evidence" "relevant" to the seven dances "in accordance with the mandate of the Court of Appeals." Joint App. 859-60. The district court did not abuse its discretion in declining to consider the minutes on the ground that they were not relevant to the seven dances.
 
 2. The Thomson Report
 
 22
 The Thomson Report was commissioned by Marvin Preston, who became Executive Director of the Center in March of 2000. In November 2000, Preston received a research report from Thomson & Thomson, a trademark and copyright research firm. The report states that "Cave of the Heart" (not one of the seven dances) was registered by Martha Graham as the "copyright claimant" on July 22, 1974. However, Preston testified in his deposition that the Center owned the rights to Graham's works. Plaintiffs argue that the Thomson report therefore impeaches Preston's testimony regarding the true owner of Graham's dances.
 
 
 23
 Their argument is unpersuasive. The Report had already been produced in 2002; plaintiffs did not offer it into evidence during the copyright trial. It is also not relevant to who owns the seven dances. The district court did not abuse its discretion in refusing to consider evidence related to "Cave of the Heart" when the only issue before the court was the ownership of the seven dances.
 
 3. The November 1982 Minutes
 
 24
 The November 1982 Board minutes reflected the Board's unanimous agreement to pay Graham "a royalty of $20,000 per year for her choreography, sets, and costumes." Joint App. 302. Plaintiffs contend a royalty payment undermines the Center's claim of ownership.
 
 
 25
 However, the district court found that Graham was never paid royalties during the relevant time period. Moreover, receipt of "royalty" payments does not necessarily evidence that the payor owned a copyright. See Graham, 374 F.Supp.2d at 362; see also Graham, 380 F.3d at 641. The Board minutes also are not directly relevant to the ownership of the seven dances specifically. The district court did not abuse its discretion in refusing to admit the November 1982 minutes.
 
 4. The 1968 Ford Foundation Document
 
 26
 The Ford Foundation document estimated the costs for a Graham project which it was considering funding; one line lists "Choreography $8,000." Plaintiffs claim that this demonstrates, once again, that Graham was paid for her copyrighted dances.
 
 
 27
 For the reasons stated above, the district court did not abuse its discretion in excluding this evidence. As the district court observed, it does not relate to the seven dances. It also demonstrates neither that Graham received this money nor that Graham owned the copyright for her works (as opposed, for example, to being paid as a consultant or teacher in connection with her choreography).
 
 C. Assignment of Seven Dances
 
 28
 It was not an abuse of discretion for the district court to rule that Graham assigned all her rights to the seven dances to the Center. Indeed, this court has already held that the district court did not abuse its discretion when it relied on much of the same evidence to determine ownership of the pre-1956 dances. See Graham, 380 F.3d at 643-44. Other evidence specifically demonstrated that the Center owned some of the seven dances. For example, in April 1973 Protas wrote to Arnold Weissberger, a Center Board member and Graham's personal attorney, stating that Graham was about to make a work film of several dances, including "Secular Games" (one of the seven dances). Protas wrote that he would be "grateful if we could draw up a contract between the Center and the photographer ... stating that we retain all rights to these films." The "we" referred to the Center. Graham, 374 F.Supp.2d at 359; see also id. at 360-61 (finding that the Center exercised control over "Embattled Garden" and "Episodes," two of the seven dances).
 
 
 29
 Plaintiffs attempted to refute this evidence by presenting a contract from 1959, in which Graham granted "exclusive rights to her portion of the choreography of EPISODES..." Id. at 361. However, as the district court explained, the relevant question is who owned the rights to "Episodes" upon Graham's death. Nothing in this contract precluded assignment of rights to the Center at a later date. Moreover, evidence demonstrated that the Center bore the costs of recreating this dance in 1979, which was consistent with ownership. See id.
 
 
 30
 Plaintiffs also argued that a 1988 Playbill listed the dance "Embattled Garden" and stated "Choreography copyright 1976 by Martha Graham." The lower court credited the testimony of Janet Eilber (now Artistic Director of Martha Graham Resources) that Playbills are "usually `very quickly and sloppily done' and that there were instances in which there were errors in the programs she inspected." Id. As an example, that very same Playbill states that Graham's "Appalachian Spring" was copyrighted. This was mistaken: "Appalachian Spring" had entered the public domain and was not copyrighted. Id. at 361-62 (citing Graham, 380 F.3d at 637 n. 26). Therefore, the district court did not abuse its discretion in finding that the 1988 Playbill was unreliable.
 
 
 31
 Finally, plaintiffs cited to 1966 documents from the B. De Rothschild Foundation which state that Graham was paid "fees" for "use of works and choreography." The district court properly found that this does not preclude assignment of the rights to the Center at some later date. More importantly, there is no evidence that "fees" represented a payment in exchange for copyright use. After Graham transferred all rights to other works to the National Endowment for the Arts, for instance, she nevertheless received "choreographer's fees" from the Center. Id. Similarly, the district court declined to consider a handwritten document from an unknown author from about 1970, which indicated that Graham was paid "royalties" for performance of some dances. The district court properly found this document to not be significant because Graham was never paid "royalties" for her works. See id.
 
 
 32
 In sum, the district court, in reaching the foregoing findings, did not abuse its discretion and correctly concluded that the Center owned the seven dances at Graham's death.
 
 III. CONCLUSION
 
 33
 The decision of the district court is affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable Louis F. Oberdorfer, United States District Court for the District of Columbia, sitting by designation
 
 
 [1]
 The following is a brief summary of the case. For more detail,see The Martha Graham Sch. & Dance Found. v. Martha Graham Ctr. of Contemp. Dance, 224 F.Supp.2d 567 (S.D.N.Y.2002).
 
 
 [2]
 The seven dances are "Embattled Garden," "Episodes: Part I," "Phaedra," "Secular Games," "Legend of Judith," "The Witch of Endor," and "Part Real-Part Dream."
 
 
 [3]
 According to plaintiffs, Harold S. Klein prepared a copyright application for the ballet "Cave of the Heart" in Graham's own name. This application was received by the Copyright Office on July 22, 1974. Hence, the minutes presumably refer to "Klein" and not "Kline."