| JASMIJN BOL | * | NO. 2024-CA-0715 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| BREDA, LLC | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-03245, DIVISION "M"
Honorable Paulette R. Irons, Judge
\* \* \* \* \* \*
**Judge Rosemary Ledet**
\* \* \* \* \* \*

(Court composed of Judge Daniel L. Dysart, Judge Rosemary Ledet, Judge Monique G. Morial)

Abid Hussain
HUSSAIN LAW LLC
3445 N. Causeway Blvd, Suite 706
Metairie, LA 70002

COUNSEL FOR PLAINTIFF/APPELLEE

Michael G Bagneris
BAGNERIS PIEKSEN & ASSOCIATES, LLC
935 Gravier Street, Suite 2110
New Orleans, LA 70112

COUNSEL FOR DEFENDANT/APPELLANT

**APPEAL CONVERTED TO SUPERVISORY WRIT APPLICATION; SUPERVISORY WRIT GRANTED; RELIEF DENIED**
**May 16, 2025**

This is a suit for dissolution of a Louisiana Limited Liability Company—Breda, LLC ("Breda"). Jasmijn Bol ("Ms. Bol")—one of Breda's two equal members[1]—filed this suit against Breda. This is Breda's second appeal in this matter. In its first appeal, Breda sought review of the trial court's March 23, 2023 judgment (the "March 2023 Judgment"), dissolving Breda and appointing a liquidator. Initially, this Court ruled in Breda's favor, reversing the trial court's judgment on procedural grounds—the lack of a contradictory hearing on the dissolution motion. *Bol v. Breda, LLC*, 23-0462, p. 8 (La. App. 4 Cir. 1/31/24), 382 So.3d 439, 444 (*on reh'g*) (Feb. 28, 2024) ("*Bol One*"). On rehearing, this Court determined that a contradictory hearing was held and affirmed the trial court's March 2023 Judgment. *Id.* (the "*Rehearing Decision*").[2]

Thereafter, the trial court, in its August 2, 2024 judgment, granted a motion to clarify the March 2023 Judgment appointing the liquidator (the "August 2024

---

[1] The other LLC member is Michael Schexnayder ("Mr. Schexnayder").

[2] For ease of discussion, this Court in this opinion refers to our original decision as "*Bol One*" and our decision on rehearing as the "*Rehearing Decision*."

Judgment"). From that judgment, Breda appeals. We classify the August 2024

Judgment as a non-appealable, interlocutory judgment. We convert Breda's appeal

to a supervisory writ, grant the writ, but deny relief.

***Factual and Procedural Background***

The factual and procedural background of this case is set forth in *Bol One*

and the *Rehearing Decision*. We repeat—in the form of the following time line—

only the basic facts necessary to address the legal issues presented here:

- April 2021—Ms. Bol filed this action seeking, among other things, dissolution of Breda;[3]

- October 2022—Ms. Bol filed a motion to dissolve Breda and to appoint a liquidator (the "Dissolution Motion");

- March 2023—The trial court conducted a hearing on the Dissolution Motion and rendered a judgment, dated March 23, 2023, dissolving Breda and appointing Desiree Charbonnet as liquidator (the "March 2023 Judgment");

- April 2023—Breda filed a notice of intent to appeal;

- June 2023—Breda filed an application for supervisory writ from the March 2023 Judgment, which this Court denied on the showing made;

- July 2023—Breda filed an appeal from the March 2023 Judgment, which was lodged in this Court;

- January 2024—This Court initially reversed the March 2023 Judgment on procedural grounds—the trial court's failure to conduct a full contradictory hearing on the Dissolution Motion—*Bol One*;

- February 2024—This Court granted Ms. Bol's rehearing application, finding there was a full contradictory hearing and affirming the March 2023 Judgment—the *Rehearing Decision*;

- March 2024—One week after this Court's decision on rehearing, Ms. Charbonnet filed an *Ex-Parte* Motion to Substitute Court Appointed Liquidator, and the trial court appointed Patrick J. Gros, CPA, ("Mr. Gros") as the new liquidator.

---

[3] Ms. Bol also asserted breach of contract and unjust enrichment claims, which have not been addressed by the trial court.

- May 2024—Ms. Bol and Mr. Gros filed a joint motion to clarify the March 2023 Judgment appointing the liquidator, seeking an order setting out the liquidator's powers and duties (the "Clarification Motion");

- July 2024—A hearing was held on the Clarification Motion; although the other LLC member—Mr. Schexnayder—filed an untimely opposition to the Clarification Motion,[4] neither he nor his attorney appeared at the hearing; and

- August 2024—The trial court rendered a judgment, granting the Clarification Motion (the "August 2004 Judgment").

This appeal followed.

**Discussion**

An appellate court has the duty to determine whether subject matter jurisdiction exists to entertain an appeal even if the parties fail to raise the issue. *Moon v. City of New Orleans*, 15-1092, p. 5 (La. App. 4 Cir. 3/16/16), 190 So.3d 422, 425. This Court can reach the merits of an appeal only when "[its] appellate court jurisdiction has been properly invoked by a valid final judgment." *Id.* The judgment from which Breda appeals is the August 2024 Judgment, clarifying the liquidator's duties. Because this judgment does not dispose of the merits in whole or in part, it is an interlocutory judgment. *See* La. C.C.P. art. 1841.[5] Although certain categories of interlocutory judgments are appealable by statute, a judgment

---

[4] In his opposition, filed the day before the hearing, Mr. Schexnayder contended that a clarifying order was improper because a judicial dissolution was improper. (Both Mr. Schexnayder and Breda are represented by the same counsel.).

[5] La. C.C.P. art. 1841 provides, in part, as follows:

A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment.

A judgment that determines the merits in whole or in part is a final judgment.

3

clarifying a liquidator's duties does not fall within any of those categories. Thus, the August 2024 Judgment is a non-appealable, interlocutory one.

The proper procedural vehicle to seek review of a non-appealable, interlocutory judgment is by filing a supervisory writ. *See* La. C.C.P. art. 2201. As the Supreme Court has observed, "the jurisprudence indicates that the decision to convert an appeal to an application for supervisory writs is within the discretion of the appellate courts." *Stelluto v. Stelluto*, 05-0074, p. 8 (La. 6/29/05), 914 So.2d 34, 39. As this Court has observed, "[t]he standard gateway criterion for exercising our discretion to convert the appeal of an interlocutory judgment to an application for supervisory review is that the motion for appeal was filed within the thirty-day delay allowed under Rule 4-3 of the Uniform Rules-Courts of Appeal for the filing of an application for supervisory writs." *Ramirez v. Evonir, LLC*, 14-1095, p. 5 (La. App. 4 Cir. 4/9/15), 165 So.3d 260, 263. The jurisprudence is replete with cases in which appellate courts have exercised their discretion to convert appeals of non-appealable interlocutory judgments into supervisory writ applications when the standard gateway criterion is satisfied. *See In re Succession of Jefferson*, 21-0620, p. 5 (La. App. 4 Cir. 3/9/22), 336 So.3d 509, 512 (citations omitted).

Breda's motion for appeal was filed on August 29, 2024—within thirty days of the August 2024 judgment—satisfying the standard gateway criterion. Thus, we exercise our discretion to convert the appeal into a writ.[6] We divide our substantive

---

[6] We find it appropriate to exercise our discretion here given Breda's challenge is to the *Rehearing Decision*. We do so to explain why such a challenge is precluded by the law of the case doctrine. *See State v. Brown*, 15-0855, p. 9 (La. App. 4 Cir. 10/21/15), 176 So.3d 761, 767 (observing that "because we are mindful of the well-established rule that the denial of a writ does not have any legal effect and because we intend to rule on the merits of the issue raised by

analysis into the following three sections: (i) junk-mail folder; (ii) law of the case; and (iii) frivolous appeal damages.[7]

*Junk-Mail Folder*

Breda contends that until the trial court rendered the August 2024 Judgment, it was unaware of the *Rehearing Decision*. According to Breda, when this Court emailed its counsel a copy of the *Rehearing Decision*, the email went directly to its counsel's junk-mail folder. Citing that explanation for its delay, Breda seeks to have this Court restore its original decision in *Bol One* and reverse its *Rehearing Decision*. The gist of Breda's argument is that this is the first opportunity it had to challenge the *Rehearing Decision*.

Ms. Bol counters that if Breda disagreed with the *Rehearing Decision*, its proper course of action would have been either to seek rehearing in this Court or to seek supervisory writs in the Louisiana Supreme Court. It did neither, causing the

---

[Relator], we have purposely decided to exercise our supervisory jurisdiction and have granted [Relator's] writ application notwithstanding that our ruling results in the denial of relief").

[7] All of Breda's assignments of error are directed to this Court's *Rehearing Decision*, which affirmed the trial court's March 2023 Judgment; Breda assigns the following:

1. The Trial Court failed to conduct a full contradictory hearing as originally ordered by the Fourth Circuit's ruling dated January 31, 2024.

2. The Trial Court failed to conduct a full contradictory hearing as mandated by La. C.C.P. 963 (B) & (C).

3. The Trial Court failed to allow facts to be developed at the Motion to Dissolve hearing by prohibiting witnesses from testifying in contravention of La. C.C.P. Article 963 (B) & (C).

4. The Trial Court appointed a Liquidator in spite of a flawed dissolution.

5. The Trial Court allowed the Liquidator to pay debts but failed to have the alleged debts authenticated.

*Rehearing Decision* to become final. *See* La. C.C.P. art. 2166 (A).[8] Ms. Bol further counters that there is no support in Louisiana law for the proposition that an attorney can be excused from complying with deadlines to file for rehearing or for supervisory writs to the Louisiana Supreme Court because the attorney neglected to regularly check the attorney's junk-email folder.

There is no Louisiana case directly addressing the junk-mail issue presented here.[9] The federal Fifth Circuit has addressed similar issues and held that the mere fact a notice is redirected to an attorney's junk-mail folder is insufficient to extend a filing deadline. *See Rollins v. Home Depot USA*, 8 F.4th 393, 396 (5th Cir. 2021) (collecting cases and observing that "[plaintiff's] counsel was plainly in the best position to ensure that his own email was working properly—certainly more so than either the district court or [the defendant]"); *see also Martin v. Senko (USA)*

---

[8] La. C.C.P. art. 2166 (A) provides:

> Within fourteen days of the transmission of the notice of the judgment of the court of appeal, a party may apply to the court of appeal for a rehearing. Within thirty days of the transmission of the notice of the judgment of the court of appeal, a party may apply to the supreme court for a writ of certiorari. The judgment of a court of appeal becomes final and definitive if neither an application to the court of appeal for rehearing nor an application to the supreme court for a writ of certiorari is timely filed.

[9] This Court has mentioned the junk-mail folder in two recent cases. But, neither of those cases involved the issue presented here of an appellate court's email of its decision. First, in *Breston v. DH Catering, LLC*, 23-0460, p. 7 (La. App. 4 Cir. 2/5/24), 384 So.3d 953, 959, this Court mentioned the issue of whether service was invalid when it was redirected to counsel's junk-mail folder, but decided the case on other grounds. Nonetheless, in *Breston*, we noted the federal cases have held that "the diversion of an email to a junk email or 'spam' box did not justify vacating a judgment for lack of service of process." *Id.* Second, in *DaRouse v. P.J.'s Coffee of New Orleans, LLC*, 24-0689 (La. App. 4 Cir. 12/17/24), ___ So.3d ___, the defendants argued that this Court should reject the plaintiff's argument that the email notice sent by the Orleans Parish Sheriff Office ("OPSO") was not received by Plaintiff's attorney because it was directed to the attorney's spam folder. There, we noted that the federal courts consistently have held that a party is not entitled to relief when an email notification is redirected to an attorney's spam folder and thus missed. But, we observed that federal district court decisions are not binding on this Court.

*Inc.*, No. 5:22-CV-01715, 2022 WL 17408414, at *3 (W.D. La. Nov. 17, 2022), *report and recommendation adopted*, No. 5:22-CV-01715, 2022 WL 17405838 (W.D. La. Dec. 3, 2022).[10] Under the circumstances presented here, we find the federal Fifth Circuit's jurisprudence persuasive.[11]

On the day the *Rehearing Decision* was handed down, this Court sent notice of the *Rehearing Decision* to the email address that Breda's counsel provided. The governing statutory rule is codified in La. C.C.P. art. 2166 (F), which provides that "'transmission of the notice' means the sending of the notice via the United States Postal Service, electronic mail, or facsimile." The governing statutory rule was satisfied here. The fact this Court's email was redirected to Breda's counsel's junk-mail folder does not mean that it was not transmitted. Paraphrasing the *Martin* court's reasoning, "it was [Breda's attorney's] defective server that failed to sync the emails to the appropriate inbox—there is no indication in the record that the transmission of the email[] [itself was] deficient. . . . [I]nternal inbox difficulties cannot negate an effective email transmission to the proper recipient." 2022 WL 17408414, at *3 (internal quotations omitted). Thus, Breda's deadlines to seek

---

[10] *See Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004) (characterizing attorney's argument that the e-filing system was at fault for failure to receive notice as "an updated version of the classic 'my dog ate my homework' line"); Jessica Belskis, *Electronic Case Filing: Is Failure to Check Email Related to an Electronically Filed Case Malpractice?,* 2 Shidler J. L. Com. & Tech. 13, 21 (2005) (noting as an attorney-practice pointer that '[i]f you have a 'Junk Mail' or 'Spam' folder, check it daily to be sure that nothing important was filed there in error. If so, set your spam filter to accept any email from the courts as a trusted email source").

[11] *See Rousse v. United Tugs, Inc.*, 17-0585, p. 6 (La. App. 4 Cir. 12/20/17), 234 So.3d 1179, 1184 (quoting *Houston v. Avondale Shipyards, Inc.*, 506 So.2d 149, 150 (La. App. 4th Cir. 1987), which observed that federal district court decisions are not binding on this Court, but we may find their "rationale persuasive and concur with [their] conclusions").

review from the *Rehearing Decision* commenced to run from the date of transmission of this Court's email notice. *See* La. C.C.P. art. 2166 (A).[12]

Our rejection of Breda's junk-mail folder argument is buttressed by *Succession of Poole*, 15-1317 (La. App. 1 Cir. 10/28/16), 213 So.3d 18, which presented a similar notice issue. There, the appellant filed both a writ and an appeal from the same trial court ruling on a prescription exception. *Poole*, 15-1317, p. 5, 213 So.3d at 22. The appellate court granted the writ and reversed the trial court. *Id.* The appellant then sought to dismiss her appeal as moot. *Id.* The appellee challenged the dismissal, arguing that the appellee's counsel never received notice of the writ. *Id.* Rejecting that argument, the appellate court in *Poole* observed:

> [A]lthough [the appellee] claims that her counsel was never served with a copy of the writ application and that she had no opportunity to respond to the writ application, this court has a notice of writ which was forwarded to all counsel of record, including current counsel for [the appellee], at the same address provided to this Court and used in this

---

[12] Insofar as Breda's appeal can be viewed as an attempt to seek rehearing of the *Rehearing Decision* on appeal of the August 2024 Judgment, we observe that the United States Supreme Court has promulgated a test for determining when parties should be allowed to appeal a order entered subsequent to a court's final judgment. *Federal Trade Commission v. Minneapolis–Honeywell Regulator Co.*, 344 U.S. 206, 73 S.Ct. 245, 97 L.Ed. 245 (1952). The Supreme Court's test is as follows:

> [T]he mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought. Only when the lower court changes matters of substance or resolves a genuine ambiguity, in a judgment previously rendered should the period within which an appeal must be taken or a petition for certiorari filed begin to run anew. The test is a practical one. The question is whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality.

*Id.*, 344 U.S. at 211-12, 73 S.Ct. at 248-49. The Supreme Court also observed that this practical test is meant "to encourage applicants to this Court to take heed of another principle—the principle that litigation must at some definite point be brought to an end. It is a principle reflected in the statutes which limit our appellate jurisdiction to those cases where review is sought within a prescribed period." *Id.* at 213, 73 S.Ct. at 249 (footnote omitted). Here, the August 2024 Judgment does not disturb the rights established in the March 2023 Judgment—ordering dissolution and appointing a liquidator. To the contrary, the August 2024 Judgment merely clarifies the liquidator's duties.

appeal. Additionally, this court sent notice of the judgment on the writ to [the appellee's] counsel at the same address that counsel used in this appeal.

*Poole*, 15-1317, p. 8, 213 So.3d at 23. The appellate court in *Poole* thus found the writ decision was final and granted the motion to dismiss the appeal. 15-1317, pp. 6-8, 213 So.3d at 22-23 (citing La. C.C.P. art. 2166 (A) and observing that "[a]ll matters previously decided by this court in the writ application cannot now be re-litigated).

Here, as in *Poole*, this Court sent Breda's counsel notice of the *Rehearing Decision* to the same email address its counsel used in this appeal; the notice was sent on the day the *Rehearing Decision* was handed down. In addition, Breda's counsel was sent notice, in the trial court, by its court-appointed liquidator—Ms. Charbonnet—of her motion to substitute that she filed on March 6, 2024, only seven-calendar days after the *Rehearing Decision* was handed down. Ms. Charbonnet, in her motion to substitute, specifically referenced this Court's *Rehearing Decision*; she stated: "[m]ost recently, an appeal to the Fourth Circuit Court resulted in a reversal of this Court's March 23, 2023 Judgment [in *Bol One*]. Shortly thereafter, rehearing was granted and the Fourth Circuit Court affirmed the March 23, 2023 Judgment [in the *Rehearing Decision*]." The record belies Breda's contention that it lacked notice of the *Rehearing Decision*. Breda's junk-mail folder argument lacks merit.

*Law of the Case Doctrine*

Although Breda fails to mention the law of the case or res judicata preclusion doctrines in its brief, Ms. Bol contends that one of those preclusion

9

doctrines applies here. Ms. Bol points out that numerous courts have held res judicata bars reconsideration of earlier appellate rulings in the same case once those rulings become final because timely further review is not sought. *See, e.g., Tolis v. Bd. of Sup's of La. State Univ.*, 95-1529, p. 2 (La. 10/16/95), 660 So.2d 1206, 1206-07. Ms. Bol contends that such is the case here regarding the *Rehearing Decision*, which Breda's appeal seeks to overturn. Alternatively, Ms. Bol contends that this appeal is a "textbook example of an appropriate situation in which to apply law of the case." *Holmes v. City of New Orleans*, 24-0269, p. 4 (La. App. 4 Cir. 9/26/24), 399 So.3d 827, 830.

When, as here, a partial final judgment[13] has been appealed and affirmed on appeal and that decision has become final, the lines between the doctrines of res judicata and law of the case are blurred.[14] Indeed, "[l]aw of the case has been aptly characterized as "'a kind of intra-action res judicata'" *Dunn v. Reg'l Transit Auth.*, 24-0513, p. 9 n.4 (La. App. 4 Cir. 3/11/25, ___ So.3d ___, ___, 2025 WL 762184

---

[13] This Court in *Bol One* found the March 2023 Judgment an appealable, partial final judgment. This appeal involves one ongoing case. Indeed, the trial court's August 2024 Judgment expressly states that it is clarifying the March 23, 2023 Judgment appointing a liquidator.

[14] Chief Justice Weimer, citing the *Tolis* line of jurisprudence, has observed that a prior judgment can have conclusive, res judicata effect by becoming final due to the passage of time without an appeal in the same action. *Comeaux v. Louisiana Tax Comm'n*, 20-01037 (La. 5/20/21), 320 So.3d 1083, 1102 n.16 (Weimer, C.J., dissenting). He, thus, observed that "the applicability of *res judicata* does not require the filing of a separate lawsuit." *Id.* (citing *Tolis, supra*). But, Chief Justice Weimer's view, albeit not without support, was the dissenting view. The majority rejected the argument that res judicata applied in the same action. In support, the majority quoted *Burguieres v. Pollingue*, 02-1385, p. 8 (La. 2/25/03), 843 So. 2d 1049, 1053, which observed: "'[a] reading of La. R.S. 13:4231 reveals that a *second action* is precluded when all of the [five requirements for res judicata to apply] are satisfied." *Comeaux*, 20-01037, 320 So.3d at 1095 n.20 (emphasis in original). Given the Louisiana res judicata statute expressly refers to a "second action" coupled with the majority's decision in *Comeaux*, we follow the jurisprudence holding that the law of the case doctrine is the applicable preclusion doctrine when, as here, there is a single case. In so doing, we observe that the result here would be the same regardless of which preclusion doctrine applies.

(quoting *People v. Evans*, 94 N.Y.2d 499, 502, 706 N.Y.S.2d 678, 727 N.E.2d 1232, 1235 (2000)).[15]

Nonetheless, the jurisprudence has enunciated the principle that the law of the case—not res judicata—is the proper preclusion doctrine that describes the relationship between prior judgments by both trial and appellate courts rendered within the same case. *Holmes*, 24-0269, p. 3, 399 So.3d at 830 (internal citations and quotations omitted) (observing that law of the case "bars reconsideration of issues [between the same parties] in the same case; whereas, res judicata bars the relitigation of the same issues between the same parties in a second, subsequent case"); *Dunn*, *supra*; *Quality Env't Processes, Inc. v. IP Petroleum Co.*, 16-0230, p. 10 (La. App. 1 Cir. 4/12/17), 219 So.3d 349, 365-66; *Posey v. Smith*, 453 So.2d 1016 (La. App. 3d Cir. 1984). Given the ongoing nature of this case, the applicable preclusion doctrine here is the law of the case.

Law of the case refers to, among other things, "[i] the conclusive effects of appellate rulings at the trial on remand, and [ii] the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case." *Holmes*, 24-0269, p. 2, 399 So.3d at 831. The circumstances presented here illustrate the application of the law of the case doctrine at both the trial and appellate levels.

First, the trial court, following the *Rehearing Decision*, correctly invoked the law of the case doctrine—albeit not by name—at the August 2024 hearing on the Clarification Motion. Rejecting Mr. Schexnayder's opposition to the Clarification

---

[15] As a commentator has observed, "[s]ince the doctrine of res judicata technically requires a final judgment on the merits in one action and an attempted relitigation in a second, it has no application within an action. The doctrine of the 'law of the case' was devised to close that gap." Siegel, N.Y. PRAC. § 448 (6th ed.).

11

Motion, the trial court observed "[t]here were no objections to [the Clarification Motion] other than that [Mr. Schexnayder and Breda] do not recognize that the 4th Circuit upheld that I dissolved that." The trial court, thus, granted the motion.

Second, the law of the case doctrine precludes the re-litigation of the issues decided in the *Rehearing Decision* in this appeal. The parties in this appeal are arguing the same legal issues applied to the same factual background as in the *Rehearing Decision*; this appeal "presents a 'quintessential factual and procedural scenario for applying the law of the case doctrine.'" *Holmes*, 24-0269, p. 5, 399 So.3d at 831. Accordingly, we reject Breda's attempt to re-litigate on this appeal the issues resolved in the *Rehearing Decision*.[16]

*Frivolous appeal damages*

Finally, Ms. Bol requests this Court award her frivolous appeal damages. She acknowledges the jurisprudential rule that a party must seek such damages in either an answer to the appeal or a cross appeal. But, she contends that this case presents a unique circumstance dictating an exception to the jurisprudential rule. In support, she cites Breda's abandonment of any argument the trial court's August 2024 Judgment was wrong, and its substitution of a collateral attack on the *Rehearing Decision*. She contends that she first was on notice of this change in argument when Breda filed its appellant brief. She further contends that she could not have ascertained this argument until after the time for filing an answer to the appeal had elapsed. We find this argument unpersuasive.

---

[16] Given Breda's argument on this appeal were solely directed to the *Rehearing Decision*, we decline to reach the merits of the August 2024 Judgment.

The jurisprudence has uniformly declined to carve an exception to the jurisprudential rule. "Although La. C.C.P. art. 2164 and [La. Unif. R. Ct. App.] Rule 2-19 provide for damages for frivolous appeals, such damages are not proper when the party seeking them fails to either appeal or answer the appeal." *Williams v. City of New Orleans*, 15-0769, p. 11 (La. App. 4 Cir. 4/20/16), 193 So.3d 259, 267 (internal citations and quotation omitted);[17] *see also An Erny Girl, L.L.C. v. BCNO 4 L.L.C.*, 16-1011, p. 17 (La. App. 4 Cir. 3/30/17), 216 So.3d 833, 844 (internal citations omitted) (observing that "an appellee cannot recover damages for taking a frivolous appeal if the damages are first requested in the appellee's brief"). Accordingly, Ms. Bol's request for frivolous appeal damages is denied.

## DECREE

For the foregoing reasons, we convert Breda's appeal to a supervisory writ application. We grant the supervisory writ, but deny the requested relief. We deny Ms. Bol's request for frivolous appeal damages.

**APPEAL CONVERTED TO SUPERVISORY WRIT APPLICATION; SUPERVISORY WRIT GRANTED; RELIEF DENIED**

---

[17] La. Unif. R. Ct. App. 2-19 provides that "[t]he court may award damages for a frivolous appeal in civil cases as provided by law."