[No. C051744. Third Dist. Apr. 3, 2008.]

CAPITOL RACING, LLC, Plaintiff and Respondent, v.
CALIFORNIA HORSE RACING BOARD, Defendant and Respondent;
LOS ALAMITOS QUARTER HORSE RACING ASSOCIATION et al.,
Real Parties in Interest and Appellants.

COUNSEL

Freidberg & Parker, Edward Freidberg, Susanna V. Pullen; Wallace & Schwartz and George M. Wallace for Real Parties in Interest and Appellants.

Hecht Solbert Robinson Goldberg & Bagley, Gregory S. Markow and Richard A. Schulman for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

**NICHOLSON, Acting P. J.**—We are asked in this appeal to determine which statute of limitations governs a challenge to an adjudicative decision of the California Horse Racing Board (Racing Board): the Administrative Procedure Act's statute, which is triggered by service of the decision upon a party, or the statute contained in the state Horse Racing Law (Bus. & Prof. Code, § 19400 et seq.), which is triggered on the date of the Racing Board's action. Here, the Racing Board did not serve its decision upon the affected party, but the party nonetheless had actual notice of the decision. We conclude the statute contained in the Horse Racing Law that is specific to the Racing Board applies, and we therefore reverse the trial court's contrary decision.

## FACTS AND PROCEDURAL HISTORY

We summarized some of the relevant facts in an earlier related unpublished decision, *Bardis v. Capitol Racing* (May 10, 2006, C046541) (nonpub. opn.), and borrow portions of that summary here while adding modifications and additional facts.

Patrons at racetracks may enjoy a twofold gambling experience: wagering on the live races at the track and wagering on races telecast by satellite from other racetracks. "Impact fees" are paid by the racetrack operator, whose live race is being telecast, to the racetrack operator that receives and displays the telecast while it conducts its own live races. The fees are designed to compensate the racetrack operator that displays and accepts wagers on the telecast races for the loss of wager income as money flows to the telecast races and away from that operator's live races.

This appeal arises from a dispute regarding the refusal by the operator of harness racing at Cal Expo in Sacramento County, plaintiff Capitol Racing, LLC (Capitol Racing), to pay impact fees to the operator of quarter horse racing at Los Alamitos Race Course in Orange County, real party in interest Los Alamitos Quarter Horse Racing Association (Los Alamitos Racing), and to the association representing the quarter horse owners, real party in interest Pacific Coast Quarter Horse Racing Association (Quarter Horse Association).[1]

In January 1994 the California Harness Horsemen's Association (Harness Association), an organization representing the owners of harness race horses, and other parties filed a lawsuit entitled *Zumbrun v. California Horse Racing Bd.* (Super. Ct. Sacramento County, 1997, No. 376925) (*Zumbrun*). The suit alleged Los Alamitos Racing and others conspired to violate antitrust laws.

At issue was whether tracks were required to accept satellite telecasts of each other's races, whether they were required to accept wagering on those televised races, and what impact fees, if any, the track telecasting a race should pay to the receiving track for loss of wagering on the receiving track's live races.

Capitol Racing, Inc., was not a party to the *Zumbrun* litigation. However, because of the overlap between live quarter horse racing at Los Alamitos and live harness racing at Cal Expo, Capitol Racing, Inc., in 1996 negotiated reciprocal payment of impact fees with Los Alamitos Racing.

In March 1997, the parties to the *Zumbrun* litigation entered into a settlement agreement (the *Zumbrun* agreement) to end the dispute over impact fees. The parties agreed that racetracks would be required to show each other's races and accept wagering on those races. They further agreed to a provision for reciprocal impact fee payments. The impact fee provision was derived from the 1996 agreement between Capitol Racing, Inc., and Los Alamitos Racing. That agreement was attached as an exhibit to the *Zumbrun* agreement.

Neither Capitol Racing, Inc., nor Capitol Racing was a party to the *Zumbrun* agreement. However, the Harness Association was a party, and its executive director was also the general manager for both Capitol Racing, Inc., and Capitol Racing.

---

[1] Plaintiff Capitol Racing is to be distinguished from Capitol Racing, Inc., an entity that is not a party to this appeal. The entities are separate entities with different owners. Capitol Racing, Inc., operated harness racing at Cal Expo prior to 1997. Plaintiff Capitol Racing began operating harness racing at Cal Expo in 1997. Capitol Racing, Inc., is no longer operational. Capitol Racing did not assume the obligations held by Capitol Racing, Inc.

For approximately two years, the parties to the *Zumbrum* agreement and, despite not being a signatory, Capitol Racing, abided by its terms. However, in 1999, an amendment to the California Horse Racing Law (Bus. & Prof. Code, § 19400 et seq.) took effect that called the impact fee provisions of the *Zumbrun* agreement into question. This amendment, the "Maddy Bill," required racetracks to show each other's races and accept wagering on those races with no impact fees if the tracks had been licensed to conduct live racing in the previous year. (Stats. 1998, ch. 335, § 9; see former Bus. & Prof. Code, § 19605.35.)

Almost immediately, the parties to the *Zumbrun* agreement began to disagree on the impact of the Maddy Bill. Capitol Racing and the Harness Association asserted the Maddy Bill freed them from paying impact fees but that Los Alamitos Racing remained obligated to show the Cal Expo races and accept wagers on them. In 2000, based on their interpretation of the Maddy Bill, Capitol Racing and the Harness Association refused to pay impact fees to Los Alamitos Racing. In response, Los Alamitos Racing and the Quarter Horse Association refused to receive the satellite telecasts of Cal Expo harness races and to accept wagers on those races.

The Harness Association filed a complaint with defendant Racing Board, accusing Los Alamitos Racing of unlawfully refusing to accept the telecasts of Capitol Racing's harness races during live quarter horse races at Los Alamitos. It asked for the Racing Board to take action, including the revocation of Los Alamitos Racing's licenses.

The Racing Board's executive director filed a statement of issues with the Racing Board in September 2000 pursuant to the Administrative Procedure Act (APA) (Gov. Code, § 11500 et seq.) to initiate an administrative hearing to resolve the dispute. The executive director did not direct the hearing towards possibly revoking Los Alamitos Racing's existing licenses. Rather, he framed the issues in the context of the next annual horse racing license applications he anticipated receiving from Los Alamitos Racing and Capitol Racing for 2001. To know whether to grant or deny those applications, the executive director asked the Racing Board to resolve all questions of law and fact concerning Los Alamitos Racing's display of Capitol Racing's harness races and acceptance of wagers on those races, and payments between the parties on account thereof based on the *Zumbrun* agreement.[2]

---

[2] In December 2000, the Racing Board approved Los Alamitos Racing's application for a license to conduct races in 2001, deferring placement of any conditions on the license until this matter was resolved.

The Racing Board referred the matter to an administrative law judge (ALJ). After holding several hearings, the ALJ in July 2002 ruled in Capitol Racing and the Harness Association's favor, finding the *Zumbrun* agreement inapplicable. The Racing Board, the ALJ decided, had authority to enforce an impact fee only if there was a voluntary agreement to pay such fees approved by the Racing Board. The *Zumbrun* agreement did not qualify because, in part, Capitol Racing was not a party to that agreement.

The ALJ also found Los Alamitos Racing was required under the Maddy Bill to accept Capitol Racing's signal of its live harness races from Cal Expo as well as wagers on those races so long as it accepted a satellite telecast from any other live racing event in the state. Capitol Racing was not obligated to pay impact fees to Los Alamitos Racing.

However, on September 25, 2002, the Racing Board rejected the ALJ's proposed decision and elected to render its own decision pursuant to Government Code section 11517, subdivision (c)(2)(E).[3] The Racing Board issued a decision on May 12, 2003, in favor of Los Alamitos Racing. It agreed with the ALJ that Los Alamitos Racing was required to accept telecast signals from Cal Expo so long as it accepted telecast signals from any horse racing meet in the state. But Los Alamitos Racing's obligation to accept Capitol Racing's signals was contingent on Capitol Racing paying impact fees "that would be owing utilizing the formula(s) contained in the previously negotiated *Zumbrun* agreement." The Racing Board made its decision effective immediately as of the decision's date, May 12, 2003.

The Racing Board served its decision on the attorney representing Capitol Racing via certified mail on May 14, 2003. It did not serve the decision on Capitol Racing itself.

On June 4, 2003, Capitol Racing and the Harness Association petitioned the Racing Board for reconsideration. The Racing Board took no action on the petition, resulting in it being deemed denied.

On July 11, 2003, Capitol Racing and the Harness Association filed this petition for administrative mandate with the superior court challenging the Racing Board's decision. The Harness Association subsequently settled its dispute and dismissed its claims. It is not a party to this appeal.

---

[3] This statute reads in relevant part: "Within 100 days of receipt by the agency of the administrative law judge's proposed decision, the agency may . . . [¶] . . . [¶] (E) Reject the proposed decision, and decide the case upon the record, including the transcript, or upon an agreed statement of the parties, with or without taking additional evidence." (Gov. Code, § 11517, subd. (c)(2)(E).)

The Racing Board and Los Alamitos Racing moved to dismiss the petition as untimely under the statute of limitations contained in the Horse Racing Law, Business and Professions Code section 19463. The trial court denied the motion, concluding the petition was filed timely under the APA's statute of limitations, Government Code section 11523.

Subsequently, the trial court granted Capitol Racing's petition on the merits. It determined the Racing Board correctly found that Los Alamitos Racing was required to take Capitol Racing's telecasts and accept wagers on those telecasts, but the Racing Board had no authority to impose impact fees on Capitol Racing because (i) there was no voluntary agreement by Capitol Racing to pay impact fees to Los Alamitos Racing, and (ii) Capitol Racing was exempt from paying impact fees under the terms of the Maddy Bill.

Los Alamitos Racing and the Quarter Horse Association (real parties in interest) appeal from the trial court's judgment. They claim the trial court erred by (1) not dismissing the petition as time-barred under Business and Professions Code section 19463; and (2) concluding the Racing Board lacked authority to impose an impact fee on Capitol Racing. We conclude the petition was time-barred. Accordingly, we do not reach real parties in interest's arguments on the merits.

## DISCUSSION

■ Two statutes of limitations could apply to this case. One, Government Code section 11523, part of the APA, in effect requires challenges to agency actions to be filed within 30 days after the agency serves its decision on the affected *party*. Capitol Racing argues, and the trial court held, Government Code section 11523 governs, and the petition was timely because the Racing Board never served its decision upon Capitol Racing.

■ On the other hand, Business and Professions Code section 19463, part of the Horse Racing Law, requires an action challenging any final administrative action of the Racing Board to be filed within 30 days "of the board's action." Real parties in interest argue Business and Professions Code section 19463 governs. We agree with real parties in interest.

■ Under Government Code section 11523, the 30-day period begins to run "after the last day on which reconsideration can be ordered" in an administrative action or if, within 10 days after that date, the petitioner

requests a record of the proceedings, the 30-day period begins to run after delivery of the record. Reconsideration can be ordered no later than 30 days after the agency has delivered or mailed its decision to the party or no later than the date set by the agency itself as the effective date of its decision if that date occurs prior to the expiration of the 30-day period. (Gov. Code, § 11521, subd. (a).)

Should an agency choose an effective date that is earlier than 30 days after service of the decision, the 30-day limitations period of Government Code section 11523 will commence running no sooner than the day the decision is delivered. "A common sense construction of the statutory language just quoted leads us to conclude that it contemplates an accelerated date falling within the 30-day period initiated by delivery or mailing of the formal decision to the affected party. Thus, the earliest date upon which an administrative agency's decision can become effective, thereby commencing the limitations period of [Government Code] section 11523, is the date on which the decision is mailed or delivered." (*Koons v. Placer Hills Union Sch. Dist.* (1976) 61 Cal.App.3d 484, 490 [132 Cal.Rptr. 243], italics omitted.)

■ By contrast, Business and Professions Code section 19463 makes no mention of service of the agency's decision as a trigger for commencing the limitations period. Under that statute, a legal action challenging any final administrative action of the Racing Board must be commenced "within 30 days of the board's action."

There is no dispute that the Racing Board proceeded and acted in this matter pursuant to the APA. As the trial court found, the Racing Board initiated its proceedings by means of a statement of issues, it referred the matter to an ALJ, and it overrode the ALJ's decision, all as provided in the APA. However, that fact does not end our analysis.

In a published opinion not cited by any party to this appeal, we addressed the conflict between the APA's statute of limitations and a specific agency's statute of limitations when the agency adjudicates a matter pursuant to the APA. In *Cockshott v. Department of Forestry & Fire Protection* (2004) 125 Cal.App.4th 235 [22 Cal.Rptr.3d 675] (*Cockshott*), the state forestry board filed an administrative complaint against a licensed timber operator alleging unlawful cutting and removal of trees. The hearing on the complaint was conducted under the APA. (125 Cal.App.4th at p. 239, fn. 4.) A statute of limitations specific to the Department of Forestry and Fire Protection, Public Resources Code section 4601.3 requires a judicial challenge to the forestry board's decisions be brought within 30 days of service of the decision. As in

this case, the statute of limitations applicable to the forestry board did not include a provision contained in the APA's statute of limitations. Unlike Government Code section 11523, Public Resources Code section 4601.3 did not include a provision extending the time to file an action if the plaintiff requested the agency to prepare an administrative record. (*Cockshott, supra*, 125 Cal.App.4th at p. 239.)

The plaintiff made numerous requests for the record, with which the forestry board eventually complied. After receiving the record, the plaintiff filed his legal action approximately four months after the forestry board issued its decision. The forestry board demurred, claiming the action was filed untimely. The trial court sustained the forestry board's demurrer without leave to amend, and we affirmed. (*Cockshott, supra*, 125 Cal.App.4th at pp. 237–238.)

■ We concluded Public Resources Code section 4601.3 governed the case for two reasons. First, the Legislature had not specified that the APA's statute of limitations applied to this proceeding by the forestry board. The forestry board's statutes authorized the forestry board to refer violations by licensees to an ALJ "assigned" in accordance with the APA, and its regulations provided that proceedings referred to an ALJ were to be conducted in accordance with the APA. (*Cockshott, supra*, 125 Cal.App.4th at p. 239.) Nonetheless, "[i]t is well established that the 'APA may govern conduct of a particular agency in one area but not another.' (*Fair Employment & Housing Commission v. Superior Court* (2004) 115 Cal.App.4th 629, 634 [9 Cal.Rptr.3d 409], citing *California Standardbred Sires Stakes Com., Inc. v. California Horse Racing Bd.* (1991) 231 Cal.App.3d 751, 758 [282 Cal.Rptr. 656] (*Standardbred Sires.*) '[T]he Legislature has demonstrated that where it intends the APA to apply, it clearly says so. Conversely, a failure to so state can only be interpreted as indicating the inapplicability of the APA.' (*Aroney v. California Horse Racing Bd.* (1983) 145 Cal.App.3d 928, 932 [193 Cal.Rptr. 708].)" (*Cockshott, supra*, 125 Cal.App.4th at p. 239.)

■ Second, Public Resources Code section 4601.3 governed because it was a special statute specific to the matter at hand. "Government Code section 11523 is a general statute, applicable to a wide variety of APA procedures, whereas [Public Resources Code] section 4601.3 is a special statute, applicable only to judicial review of actions undertaken by the Board. ' "It is well settled . . . that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough

to include the subject to which the more particular provision relates." ' (*San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 577 [7 Cal.Rptr.2d 245, 828 P.2d 147], followed in *Miller v. Superior Court* (1999) 21 Cal.4th 883, 895 [89 Cal.Rptr.2d 834, 986 P.2d 170].)

"Here, [Public Resources Code] section 4601.3, the special statute, controls over Government Code section 11523, the general statute." (*Cockshott, supra,* 125 Cal.App.4th at p. 240.)

The *Cockshott* analysis applies here. Under this ruling, we do not read a statute of limitations specific to a particular agency to include additional provisions contained in the APA's statute of limitations unless the Legislature directs us to do so. That did not happen here.

First, the APA's statute of limitations, Government Code section 11523, does not state it applies to the Racing Board in this instance. In contrast, Business and Professions Code section 19463 expressly applies to any final administrative action, as here, taken by the Racing Board.

Capitol Racing disagrees, arguing the Horse Racing Law states the APA applies to proceedings to revoke a license issued by the Racing Board. The Horse Racing Law mandates formal APA notice and hearing procedures apply in proceedings by the Racing Board to revoke a license (Bus. & Prof. Code, § 19461), or to issue or deny a license to persons associated with horse racing that are not otherwise licensed. (Bus. & Prof. Code, § 485.) The Horse Racing Law does not express any similar requirement for any other proceeding the Racing Board undertakes.

This was not a proceeding to revoke a license or to issue a license to persons not otherwise licensed. The statement of issues filed by the Racing Board's executive director did not list any of these possible actions as one of the pending issues. This proceeding concerned the Racing Board's consideration of anticipated license *applications* to conduct races the following year. Nothing in the Horse Racing Law required the Racing Board to undertake this particular hearing pursuant to the APA. (See *Standardbred Sires, supra,* 231 Cal.App.3d at p. 758.)

Second, Business and Professions Code section 19463 is a special statute specific to actions taken by the Racing Board. As such, it governs over the more general statute of limitations contained in the APA.

Capitol Racing argues there is no conflict between the two statutes of limitations because what is at issue is service of the agency's decision upon the party. To the contrary, there is an obvious conflict. Under Government Code section 11523, service upon the party triggers the limitation period. Under Business and Professions Code section 19463, the agency's action triggers the limitation period, regardless of service of the decision upon the party. With such a conflict, the special statute specific to the Racing Board governs, and we do not read it to include other provisions contained in the APA's statute of limitations.

Capitol Racing points to the Racing Board's regulations, which obligate the Racing Board to give notice whenever required in writing to the person to be notified, i.e., the party. (Cal. Code Regs., tit. 4, § 1413.) Nothing in this regulation, however, requires notice be given to the party before the limitations period in Business and Professions Code section 19463 commences.

Moreover, this is not the case to complain about lack of notice. Although Capitol Racing was not served with the Racing Board's decision, it nonetheless obtained timely notice of the Racing Board's action when the Racing Board served its decision on Capitol Racing's attorney. Otherwise, it would not have been able to have petitioned the Racing Board as it did to reconsider its decision.

Capitol Racing also claims the real parties in interest should be estopped from claiming the APA does not apply because the parties and the Racing Board took the position at various points during the hearing that it did apply. Nowhere in the record, however, is there evidence that any party took the position that the APA's statute of limitations applied instead of the Horse Racing Law's statute. Again, the APA may govern an agency's conduct in one area but not in another.

█ Alternatively, Capitol Racing argues no statute of limitations applies here because the Racing Board acted outside its jurisdiction in promulgating its decision and requiring Capitol Racing to pay impact fees. Here, the Racing Board had jurisdiction to entertain the issues presented to it by its executive director. As thus framed by the Racing Board, the administrative hearing concerned license applications forthcoming from both real parties in interest and Capitol Racing. The Racing Board has jurisdiction over horse racing in California. (Bus. & Prof. Code, § 19420.) It has authority to issue licenses to conduct horse races if it is in the public interest. (Bus. & Prof. Code, § 19480.) It may impose conditions on the licenses it issues. (Bus. & Prof. Code, § 19460.) And any final decision of the Racing Board must be

challenged within 30 days of the Racing Board's action. (Bus. & Prof. Code, § 19463.) Clearly the Racing Board had authority to impose lawful conditions on any license it granted to Capitol Racing. If Capitol Racing believed the Racing Board imposed a condition in excess of its jurisdiction, it had to raise that argument within the time set by Business and Professions Code section 19461.

Capitol Racing's citations to authority in support of exempting itself from the statute of limitations on the basis of lack of jurisdiction do not apply. (*Anza Parking Corp. v. City of Burlingame* (1987) 195 Cal.App.3d 855, 860–861 [241 Cal.Rptr. 175] [city lacked authority to restrict transferability of conditional use permit]; *Buckley v. California Coastal Com.* (1998) 68 Cal.App.4th 178, 190–191 [80 Cal.Rptr.2d 562] [Coastal Commission lacked authority to issue or deny a use permit]; *City and County of San Francisco v. Padilla* (1972) 23 Cal.App.3d 388, 395, 399–400 [100 Cal.Rptr. 223] [city permit appeals board lacked jurisdiction to approve a variance to a zoning ordinance].) Those cases concern instances where the agency acted without jurisdiction, or, put another way, where there was "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942].) This case alleges an abuse of jurisdiction, not the absence of jurisdiction.

Finally, Capitol Racing argues that even if Business and Professions Code section 19463 applies, its time period commencing with the Racing Board's "action" did not begin to run on the date the Racing Board promulgated the decision because in the body of its decision, the Racing Board gave Capitol Racing 30 days from the decision's effective date to begin paying impact fees. This argument ignores the express language of Business and Professions Code section 19463. The limitations period began to run on the date of the Racing Board's action. The Racing Board took no action 30 days after it promulgated its decision; it took action on the date of its decision.

■  For all of the reasons above, we conclude Capitol Racing's petition was time-barred under Business and Professions Code section 19463.[4]

---

[4] Capitol Racing filed a request for judicial notice. Because the documents that are the subject of the request go to the merits of the case, we deny the request as moot.

## DISPOSITION

The judgment is reversed, with directions to dismiss the petition as barred by Business and Professions Code section 19463. Costs on appeal are awarded to real parties. (Cal. Rules of Court, rule 8.278(a).)

Morrison, J., and Cantil-Sakauye, J., concurred.

On April 22, 2008, the opinion was modified to read as printed above.