Filed 3/25/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MILLVIEW COUNTY WATER DISTRICT,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>STATE WATER RESOURCES CONTROL BOARD,<br><br>        Defendant and Appellant;<br><br>SONOMA COUNTY WATER AGENCY,<br><br>        Real Party in Interest and Respondent. | A146605<br><br>(Mendocino County Super. Ct. No. SCUK-CVPT-14-64233)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

It is ordered that the opinion filed herein on February 22, 2019, be modified as follows:

1. On page 9, in the first full paragraph, delete the sentence that reads, "Millview also does not contend it anticipated any further substantive decisionmaking by the Board following the hearing," and add as footnote 6, the following footnote, which will require renumbering of all subsequent footnotes:

> [6] Millview argues the Board could have modified the draft order at a subsequent closed session on the May 20, 2014 meeting agenda. However, nothing in the record suggests the closed meeting actually occurred once the Board decided to adopt the draft order at the conclusion of the public hearing. Moreover, as discussed in section II.A.2., *post*, because the Board formally adopted the order during the public hearing, any subsequent substantive changes would require either a motion by the Board or a petition from any interested person or entity. (§ 1122.)

The modification does not change the appellate judgment. (Cal. Rules of Court, rule 8.264(c)(2).)

Respondent's petition for rehearing is denied.

Dated:

_____
Margulies, Acting P.J.

Filed 2/22/19 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MILLVIEW COUNTY WATER DISTRICT, <br><br>     Plaintiff and Respondent, <br><br>v. <br><br>STATE WATER RESOURCES CONTROL BOARD, <br><br>     Defendant and Appellant; <br><br>SONOMA COUNTY WATER AGENCY, <br><br>     Real Party in Interest and Respondent. | A146605 <br><br>(Mendocino County <br>Super. Ct. No. SCUK-CVPT-14-64233) |

The State Water Resources Control Board (Board) seeks review of the judgment entered following the issuance of a peremptory writ of mandate directing the Board to vacate and set aside its Order No. WR 2014-0021. The Board asserts the petition filed by Millview County Water District (Millview) was untimely, the Board's hearing procedures were fair and in compliance with applicable law, and the trial court erred by not remanding the matter to the Board for further proceedings. We conclude Millview's petition was time-barred and, accordingly, reverse the judgment.

## I. BACKGROUND

In June 2006, Millview acquired ownership of License 5763 from Masonite Corporation. License 5763 authorized the direct diversion of water from the Russian River, at a maximum direct diversion rate of 5.9 cubic feet per second for industrial use within a designated area of Yokayo Rancho.

In May 2008, the Board's Division of Water Rights issued a notice of proposed revocation to Millview regarding the water rights in License 5763. Shortly thereafter, Millview timely requested a hearing on the proposed license revocation. On April 2, 2013, the Board held a hearing to receive evidence as to whether License 5763 should be revoked. Millview appeared at the hearing through its counsel. It presented evidence, examined witnesses, and otherwise participated at the hearing. Millview also filed a closing brief following the hearing.

On April 22, 2014, the Board issued a draft order revoking License 5763. The cover letter stated the draft order "is tentatively scheduled to be considered for adoption by the [Board] during its May 20, 2014 meeting." After receiving written comments on the draft order, including written comments from Millview, the Board issued a notice of correction to one footnote in the draft order.

On May 20, 2014, the Board conducted a public meeting for which consideration of the draft order was an agenda item. Millview attended the meeting and gave an oral statement. At the conclusion of the public meeting, the Board found the water at issue had not been put to beneficial use for a period of five years or more and formally adopted the draft proposed order, along with the single correction previously circulated to the parties, as Order No. WR 2014-0021 (Order).

On May 30, 2014, Ernest Mona, an employee with the Board's hearings and special programs section, e-mailed a copy of the Order to the various hearing participants, including Millview. The cover letter stated the Order was adopted by the Board on May 20, 2014 and the statute of limitations for seeking reconsideration began to run from that date. Neither party identifies any differences between the Order and the draft order and change sheet circulated prior to the public hearing.

On June 2, 2014, Mona e-mailed a "Corrected Version" of the Order (Corrected Order) to the various hearing participants, including Millview. The transmittal e-mail stated: "Order WR 2014-0021 attached to my May 30, 2014 email, has been 'Corrected' at page 18 of the order, to reflect that State Water Board Chair Marcus was absent during the Board's adoption of the order." The cover letter stated: "Enclosed is corrected Order

2

WR 2014-0021, which was adopted by the [Board] on May 20, 2014. . . . [¶] No later than 30 days after adoption of the corrected order, any interested person may petition the State Water Board for reconsideration . . . ." Neither party identifies any additional changes made to the Order.

On June 30, 2014, Millview filed a petition for writ of administrative mandamus (petition). The petition raised various allegations regarding the adequacy of the public hearing and the Corrected Order and requested the court issue a writ ordering the Board to set aside Order WR 2014-0021.[1] In response, the Board filed a demurrer asserting Millview failed to file the petition within the applicable 30-day statute of limitations, as set forth in Water Code[2] section 1126, subdivision (b) (section 1126(b)).

Millview subsequently filed an amended petition for writ of administrative mandamus (amended petition). The amended petition asserted the "final action" of the Board was taken on June 2, 2014, when it transmitted the Corrected Order to Millview. The Board again demurred to the amended petition as time-barred.

The trial court overruled the demurrer. The court concluded Millview adequately pled compliance with the 30-day statute of limitations. It noted a "final action" by the Board does not necessarily require a hearing but may arise from " '*any* decision or order.' " The court concluded, "it is clear from the pleadings and records presently before the court that the June 2, 2014 decision is the 'final' decision of the board, from which the limitations period begins to run." The court did state, however, the Board could assert a statute of limitations defense. And the Board did so in its answer to the amended petition.

In its opposition brief to the amended petition, the Board again argued the petition was time-barred under section 1126(b). Millview's closing brief argued otherwise. The trial court again rejected the Board's argument and found Millview filed the petition

---

[1] While the petition specifically references the Corrected Order in its cause of action, the prayer for relief references "Order WR 2014-0021" without specifying whether it is referring to the Order, the Corrected Order, or both.

[2] All statutory references are to the Water Code unless otherwise specified.

within the applicable limitations period. In its judgment granting the peremptory writ of mandate, the trial court concluded the Corrected Order "constitute[d] a 'final action' insofar as it qualifies under the expansive language of §1126 as '*any* decision or order.' " The Board timely appealed.

## II. DISCUSSION

### A. *Statute of Limitations*

Both parties agree Millview's petition is subject to the 30-day statute of limitations set forth in section 1126(b). Section 1126(b) states in relevant part: "Any party aggrieved by any decision or order may, not later than 30 days from the date of final action by the board, file a petition for a writ of mandate for review of the decision or order." The parties disagree as to what event constitutes the "final action by the board." The Board contends the "final action" occurred when the Board adopted the proposed order on May 20, 2014 because that adoption "completed and finalized the decisionmaking process." The Board further argues the subsequent conduct by the clerk of the Board—providing notice of the Order on May 30, 2014 and issuing the Corrected Order on June 2, 2014—were merely ministerial tasks. Millview, conversely, asserts the "final action" by the Board was its issuance of the Corrected Order or, alternatively, service of the Order. We address each argument in turn.

#### 1. Whether the Corrected Order Constitutes a "Final Action"

Neither party has cited any authority interpreting "final action" as used in section 1126(b). Nor are we aware of any such authority. "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.) We begin by examining the statutory language, giving the words their usual, ordinary meanings and giving each word and phrase significance. (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063.) We consider such language " 'in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.' " (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 165.) " 'If there is no ambiguity in the language, we presume the

4

Legislature meant what it said, and the plain meaning of the statute governs.' " (*Curle*, at p. 1063.) Only "[i]f the statutory language permits more than one reasonable interpretation" do we "consider other aids, such as the statute's purpose, legislative history, and public policy." (*Coalition of Concerned Communities*, at p. 737.) Statutory construction is a question of law we decide de novo. (*People ex rel. Lockyer v. Shamrock Foods Co*. (2000) 24 Cal.4th 415, 432.)

### a. *The Statutory Framework*

While neither section 1126(b) nor any corresponding provisions define "final action," we first look to the statutory framework for guidance as to the Legislature's intent. In this instance, section 1122, which pertains to reconsideration, aids our interpretation. Section 1122 provides in relevant part: "the board may order reconsideration of all or part of a decision or order on the board's own motion or on the filing of a petition of any interested person or entity." A petition for reconsideration "shall be filed not later than 30 days from the date the board *adopts a decision or order*." (§ 1122, italics added.) The Board must either grant or deny a petition for reconsideration within "90 days from the date the board *adopts the decision or order*." (*Ibid.*, italics added.) Section 1126(b) provides, in turn, any party aggrieved by any decision or order may, "not later than 30 days from the date of final action by the board," file a writ petition seeking judicial review. This statute specifies that filing a petition for reconsideration by the board is *not* a prerequisite to filing a writ petition. But if a party does file a petition for reconsideration, that petition extends the time period to file a writ petition. (*Ibid.*)

The procedural interrelationship of sections 1122 and 1126 indicates a "final action," as set forth in section 1126(b), is dependent on whether there is a timely petition for reconsideration. If no such petition is filed, then the Board's order or decision, as it was adopted, is the Board's "final action" in the matter. (Accord, *HealthSmart Pacific Inc. v. Belshé* (1999) 72 Cal.App.4th 1202, 1207 [assessing Welf. & Inst. Code, § 14171 and finding it "inconsistent" to have reconsideration period and judicial review period commence on the occurrence of different events].) However, if a party does file a

5

petition for reconsideration, then the Board's "final action" is either denial of the petition or any ensuing decision or order following its grant of reconsideration. (See § 1126, subd. (b) ["The time for filing the petition for writ of mandate . . . shall be extended for any person who seeks reconsideration by the board pursuant to this article."].)

Such an interpretation is in accord with the Board's cover letters accompanying the Order and Corrected Order. Those letters both state the Order (or Corrected Order) was adopted on May 20, 2014, and the petition for reconsideration began to run *on that date*. In other words, this correspondence expressly stated the relevant action was the Board's "adoption" of the Order on May 20, 2014. This was the date that triggered the reconsideration period. Had Millview sought reconsideration, or the Board ordered such reconsideration, the time to file a writ petition would have been extended. But reconsideration was not ordered by the Board, nor was it sought by Millview. Accordingly, the Board's May 20, 2014 Order was, and remained, its "final action" on the matter.

### b. *Relevant Case Law*

Relevant case law also supports our statutory interpretation of "final action." Courts have recognized the word "final" "has a myriad of definitions the selection of which depends upon the context in which it is used. . . . 'Final' can either be defined as the last of a series of acts or events or it can mean 'conclusive' in the sense that no further act is necessary prior to the enforcement of a decision." (*Franchise Tax Bd. v. Superior Court* (1998) 63 Cal.App.4th 794, 800.) In assessing which meaning should apply, we find *Phelps v. State Water Resources Control Bd.* (2007) 157 Cal.App.4th 89 (*Phelps*) instructive. There, the Board sought to enforce curtailment notices against the plaintiffs for unauthorized diversion of water, which culminated in the imposition of civil penalties. (*Id.* at p. 93.) The plaintiffs filed a petition for writ of mandate, which was denied, and they subsequently appealed. (*Ibid.*) The Court of Appeal, in an opinion written by now-Chief Justice Cantil-Sakauye, concluded the plaintiffs' petition was time-barred under section 1126(b). (*Phelps*, at p. 100.) Specifically, the court found the enforcement action was not the "final action by the board" for statute of limitations purposes. Rather, the

6

plaintiffs could have challenged the disputed terms when they received the curtailment notices because those notices required the plaintiffs to immediately discontinue water diversion. (*Id.* at p. 104.) The court stated: "Plaintiffs offer no support for their argument that the curtailment notices do not constitute a 'final action' by the [Board] and therefore are not subject to judicial review. As we stated, the notices are unequivocal in directing plaintiffs to immediately stop diverting water pursuant to Term 91. Section 1126, subdivision (b) provides judicial review for '[a]ny party aggrieved by any decision or order . . . .' " (*Id.* at p. 105, italics omitted.) *Phelps* directly contradicts Millview's position that "final action" should be the Board's *last* action.[3] Despite the Board engaging in a substantive enforcement action, the *Phelps* court looked to the prior curtailment notices as triggering the 30-day statute of limitations.

The California Supreme Court also took a similar approach when interpreting the limitations period set forth in Government Code section 65009.[4] In *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, the court noted "the 'final administrative decision is the final administrative action approving or rejecting the tentative map, an adjudicatory decision,' since approval of a final map which substantially complies with the previously approved tentative map is a mandatory ministerial act." (*Id.* at p. 22, fn. 11; accord, *Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 510 ["the Director's letter of December 15, 2003, represented City's final decision . . . . Unless a timely legal challenge to this decision was successful on the merits, nothing

---

[3] In rejecting the Board's demurrer to the petition as time-barred, the trial court cited *Phelps* to conclude the Corrected Order was the "final action." The trial court stated *Phelps* held "judicial review is not limited to 'proceedings in which by law a hearing is required.' " We agree a "final action" is not necessarily limited to actions involving a hearing. However, it does not mean any action without a hearing will constitute a "final action." Instead, courts must look at the impact and substance of that action, as the court did in *Phelps*. (*Phelps*, *supra*, 157 Cal.App.4th at p. 104.)

[4] Government Code section 65009, subdivision (c) provides in part: "no action or proceeding shall be maintained in any of the following cases by any person unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision."

7

further was required to allow the construction process to commence."]; *County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312, 1324 [to "pinpoint" when the statute of limitations begins to run on a claim against a land use restriction, one must "determine what specific governmental act or acts" are challenged].)  Accordingly, a final action is not necessarily the last action taken by an agency, but rather is that agency's substantive decision.  (See also *Citizens for a Green San Mateo v. San Mateo County Community College Dist.* (2014) 226 Cal.App.4th 1572, 1594–1595 [concluding " 'The limitations period starts running on the date the project is approved by the public agency and is not retriggered on each subsequent date that the public agency takes some action toward implementing the project' " when interpreting Pub. Resources Code, § 21167].)

This approach also is in accord with federal authorities interpreting the phrase "final agency action" under the Administrative Procedures Act.[5]  The United States Supreme Court explained for an action to be "final," it first " 'must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.' " (*Unites States Army Corps of Engineers v. Hawkes Co., Inc.* (2016) ___ U.S.___ [136 S.Ct. 1807, 1813] (*Hawkes*).)  As to the first prong, courts have noted "[o]ne 'clear indication' that an agency has issued its 'last word' on a subject is that no further agency decisionmaking can be expected." (*6801 Realty Co., LLC v. U.S. Citizenship & Immigration Services* (E.D.N.Y., Nov. 30, 2016, No. 15 Civ. 5958 (AMD))

---

[5]  Despite differences between state and federal law, it can be "appropriate for this court to look to relevant federal authorities for further guidance" in interpreting similar language used in both state and federal statutes.  (*Lipow v. Regents of University of California* (1975) 54 Cal.App.3d 215, 226 [interpreting term " 'meet and confer in good faith' " where federal Labor-Management Relations Act includes similar language]; compare with *Davidson v. Seterus, Inc.* (2018) 21 Cal.App.5th 283, 304 [declining to adopt federal definition of " 'debt collector' " because California Legislature expressly included other provisions of federal act but not the provision including that definition].)

8

2016 WL 7017354 at p. *3; *Fairbanks N. Star Borough v. U.S. Army Corps of Engineers* (9th Cir. 2008) 543 F.3d 586, 593 [same].)

Here, the Board's "final action" occurred on May 20, 2014, when it adopted the Order. Millview does not identify any outstanding issues that remained pending or otherwise unresolved following that hearing. Millview also does not contend it anticipated any further substantive decisionmaking by the Board following the hearing. Nor is there any dispute that the Order gave rise to legal consequences—i.e., the revocation of Millview's license. The Board's decision to revoke Millview's license was unequivocal. While the Board issued the Corrected Order, that order did not change any substantive aspect of the Order. Millview only challenges the license revocation adopted on May 20, 2014; it does not contest the change made in the Corrected Order. Accordingly, Millview could have challenged the Board's decision to revoke the license when it adopted the Order on May 20, 2014.

### *c. Impact of Clerical Error on Order's Finality*

We further conclude the Order's clerical error regarding the Board chair's vote does not negate its finality. As explained by the Supreme Court, issuance of a revised order "is a common characteristic of agency action, and does not make an otherwise definitive decision nonfinal." (*Hawkes*, *supra*, 136 S.Ct. at p. 1814; accord, *Local 2 IBEW v. Anderson Underground Const., Inc*. (8th Cir. 1990) 907 F.2d 74, 76 ["the committee's ministerial activity of correcting a minor computational error did not alter the essential elements of the February award's finality"]; *Sathianathan v. Pac. Exch., Inc*. (3d Cir. 2007) 248 Fed.Appx. 345, 348 [corrected arbitration award, which was substantively identical to the initial award but included missing signatures, was properly allowed].)

Whether a modification to a final decision or judgment restarts the statute of limitations for an appeal depends on whether the modification was substantial. (*Sanchez v. Strickland* (2011) 200 Cal.App.4th 758, 765 ["If a substantial modification was made, the period restarts."]; cf. *Pepsico, Inc. v. F.T.C.* (2d Cir. 1972) 472 F.2d 179, 185 ["Many of the considerations supporting the final judgment rule with respect to appeals from

9

decisions of lower courts are equally present in the case of agency action . . . ."].)

Whether the modification was "substantial" does not depend on whether it was a clerical error:  " 'some corrections of clerical errors will substantially change the judgment.  Also, all insubstantial changes to judgments do not necessarily involve the correction of clerical errors.' "  (*Ellis v. Ellis* (2015) 235 Cal.App.4th 837, 843.)  Rather, the question is whether the modification " 'materially affected' " the appealing party's rights.  (*Ibid.*)

The Supreme Court also has long applied such a rule.  In *F.T.C. v. Minneapolis-Honeywell Co.* (1952) 344 U.S. 206 (*Honeywell*), the Supreme Court considered the timeliness of a petition for certiorari.  The Seventh Circuit had issued a " 'Final Decree' " and an earlier decision.  The petition was filed within the 90-day filing period after the final decree, but was based entirely on the substance of the earlier decision.  (*Id.* at pp. 208–210.)  The Supreme Court held the petition was untimely because the final decree did not alter the substance of the earlier decision, so it did not restart the limitations period.  The court observed:  "While it may be true that the Court of Appeals had the power to supersede the [earlier] judgment . . . with a new one, it is also true, as that court itself has recognized, that the time within which a losing party must seek review cannot be enlarged just because the lower court in its discretion thinks it should be enlarged.  Thus, the mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought.  Only when the lower court changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered should the period within which an appeal must be taken or a petition for certiorari filed begin to run anew."  (*Id.* at pp. 211–212, fns. omitted.)[6]

---

[6] While *Honeywell* was decided prior to the amendment of Federal Rule of Appellate Procedure rule 4, subsequent opinions have applied its reasoning when judgments have been revised *sua sponte* rather than upon a motion.  (See, e.g., *In re American Safety Indemnity Co. v. Official Com. of Unsecured Creditors* (2d Cir. 2007) 502 F.3d 70, 71–72.)

10

Millview does not contend the Corrected Order contains any substantial modification.  Nor does it dispute the accompanying e-mail, which stated the only revision in the Corrected Order was modifying the Board chair's vote from "aye" to "absent," accurately reflected the modification.  Rather, Millview's counsel merely asserts he did not review the Order in depth or compare it to the Corrected Order before calendaring the statute of limitations from the Corrected Order.  But counsel's failure to read the Order and assess the nature of the revisions does not negate the Order's finality.  Millview does not contend the Corrected Order "change[d] matters of substance." (*Honeywell*, *supra*, 344 U.S. at p. 211.)  Accordingly, the Corrected Order did not restart the applicable statute of limitations.

**2.  May 30, 2014 Service of the May 20, 2014 Order**

The parties next argue as to whether the statute of limitations should be calculated from the date of service of the Order.  Millview raises three arguments to support its position that the limitations period cannot begin to run before service.  First, Millview contends chapter 4 of the Water Code, which includes section 1126(b), necessarily incorporates service into the Board's "final action."  Next, Millview argues the broader legislative changes to the Water Code demonstrate the Legislature intended a uniform statute of limitations running from the date of service.  Finally, Millview asserts practical considerations require the limitations period to begin only after service.  We do not find any of these arguments convincing.

The statutory language states the limitations period runs from "the date of final action by the board."  (§ 1126, subd. (b).)  Because the statutory scheme requires the Board to "serve" any order (§ 1121), Millview contends such service must be encompassed with the definition of "final action."  However, the statute of limitations does not necessarily run from the date of service simply because the Board is required to serve its orders.  If the Legislature intended to have the statute of limitations run from

11

service, it certainly knew how to craft such language. For example, section 13330,[7] subdivision (a), provides for a statute of limitations running "from the date of service of a copy of a decision or order issued by the state board . . . ." (Cf. § 1302 ["protests against the approval of the application may be filed within 60 days from the date of issuance of the notice"]; § 2017 ["The report of the board as referee is subject to review by the court . . . within 30 days after date of mailing notice of the filing of the report."].) The Legislature's failure to use such language here suggests "final action" refers to the Board's substantive decision. As aptly stated in *City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 55: "In using two quite different terms . . . the Legislature presumably intended to refer to two distinct concepts. . . . We ordinarily reject interpretations that render particular terms of a statute mere surplusage, instead giving every word some significance." (Accord, *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117 ["Where different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning."].)

Courts also have rejected similar arguments arising from efforts to extend limitations periods by the mailing grace period in Code of Civil Procedure section 1013. For example, in *Camper v. Workers' Comp. Appeals Bd.* (1992) 3 Cal.4th 679, the California Supreme Court noted the statute of limitations in the Labor Code provision at issue ran from the "filing" of an order or decision. (*Camper*, at p. 684.) Because "[t]here is no reference in this statute to service," the limitations period ran from the date the order was filed, not served, and Code of Civil Procedure section 1013 was inapplicable. (*Camper*, at pp. 684–685, 688; see *San Mateo Federation of Teachers v. Public Employment Relations Bd.* (1994) 28 Cal.App.4th 150, 152 ["five-day extension does not apply when the prescribed time period is commenced by some 'circumstance, act or

---

[7] We recognize section 13330, subdivision (a), is a specific statute of limitations in a separate statutory scheme pertaining to enforcement actions under the Porter-Cologne Water Quality Control Act, but find the comparison still relevant for purposes of this analysis.

occurrence other than service' "]; *Southwest Airlines v. Workers' Comp. Appeals Bd.* (1991) 234 Cal.App.3d 1421, 1426 [same].)

Millview next contends the purpose of the legislative revisions to the Water Code was to adopt a uniform statute of limitations that runs from the date of service. Undoubtedly, the legislative history expresses concern regarding inconsistencies in the then-current statutes governing petitions for reconsideration and judicial review of Board orders and decisions. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3036 (1995–1996 Reg. Sess.) as amended June 13, 1996.) However, the Senate bill analysis indicates the purpose of the legislation was to "consolidate[] and clarif[y] existing laws governing petitions for reconsideration and judicial review of . . . orders and decisions issued by the [Board] . . . ." (*Ibid.*) Nothing in the legislative history indicated the revisions were to create a uniform statute of limitations running from the date of service. And the various Water Code sections containing statutes of limitations illustrate as much. Some Water Code sections specifically impose statutes of limitations running from the date of the Board's order. (See, e.g., § 13321, subd. (b)(1).) Others specifically run from the date of service. (See, e.g., § 13330, subd. (a).) Accordingly, neither the statutory scheme nor the legislative history suggests the Legislature intended all Water Code statutes of limitations to run from the date of service of an order.

Finally, Millview argues the statute of limitations must run from the service of the Order because otherwise parties may be required to appeal without having a written order. Without a written order, Millview contends it cannot know whether additional modifications were made by the Board following the hearing. The lack of a written order is not dispositive. Various limitations periods run from an agency decision rather than notice of that decision. For example, in *Capitol Racing, LLC v. California Horse Racing Bd.* (2008) 161 Cal.App.4th 892, 900, the court considered whether the applicable statute of limitations was contained in Business and Professions Code section 19463 or Government Code section 11523. The court noted the limitations period under Government Code section 11523 commenced on " 'the date on which the decision is mailed or delivered.' " (*Capitol Racing*, at p. 900.) "By contrast, Business and

13

Professions Code section 19463 makes no mention of service of the agency's decision as a trigger for commencing the limitations period. Under that statute, a legal action challenging any final administrative action of the Racing Board must be commenced 'within 30 days of the board's action.' " (*Ibid.*) The court concluded Business and Professions Code section 19463 provided the applicable statute of limitations and, because the plaintiff failed to file its petition within 30 days from the racing board's decision, the court held the petition was time-barred. (*Id*. at pp. 902, 904; see also *City of San Diego v. Superior Court* (2015) 244 Cal.App.4th 1, 10 [six-month period for filing a petition for relief from denial of leave to present a claim under the Government Claims Act "begins to run on *denial* of an application for leave and *not* on *notice* of that denial"].)

Nor are Millview's concerns regarding potential posthearing changes valid. While a problem could arise if parties are unaware of the scope of an agency's decision, that is not the situation here. The record indicates the draft order, along with the one revision, was circulated to all parties prior to the hearing. At the public hearing, Millview did not express any confusion regarding what order was being considered. And the oral motion clearly specified the Board was adopting the draft order modified only by the previously circulated revision. Once the Board adopted its order at the hearing, any reconsideration would require either a motion by the Board or a petition from any interested person or entity. (§ 1122.) Only "obvious typographical or clerical error[s]" could be modified without notice and a hearing. (§ 1124.) And, as discussed in part II.A.1., *ante*, any substantive revisions would arguably constitute a "final action by the board" for statute of limitations purposes.

## B. *Equitable Estoppel*

The trial court alternatively found the Board was estopped from asserting a statute of limitations defense because its June 2, 2014 letter induced Millview to consider the Corrected Order the Board's "final order." The Board argues the court erred because the June 2, 2014 letter only made statements of law, which were limited to reconsideration,

14

and Millview cannot claim ignorance of the law.  We agree estoppel is inappropriate in this instance.

"An essential element of equitable estoppel is that the party to be estopped . . . 'intended by [its] conduct to induce reliance by the other party, or acted so as to cause the other party reasonably to believe reliance was intended.' " (*Cotta v. City and County of San Francisco* (2007) 157 Cal.App.4th 1550, 1567.)  "The act or omission must constitute a misrepresentation or nondisclosure of a material *fact*, rather than law." (*Superior Dispatch, Inc. v. Insurance Corp. of New York* (2010) 181 Cal.App.4th 175, 186.)  For estoppel to apply "[i]t is not necessary that the defendant acted in bad faith or intended to mislead the plaintiff.  [Citations.]  It is sufficient that the defendant's conduct in fact induced the plaintiff to refrain from instituting legal proceedings." (*Shaffer v. Debbas* (1993) 17 Cal.App.4th 33, 43.)  However, "[r]eliance by the party asserting the estoppel on the conduct of the party to be estopped must have been reasonable under the circumstances." (*Mills v. Forestex Co*. (2003) 108 Cal.App.4th 625, 655.)

Here, we cannot reasonably conclude the June 2, 2014 letter was intended to induce Millview to believe the statute of limitations would begin running from the date of the letter.  The letter is entirely silent as to the limitations period for seeking judicial review.  While the letter sets forth the statute of limitations for seeking reconsideration, it states:  "No later than 30 days after adoption of the corrected order, any interested person may petition the State Water Board for reconsideration . . . ."  Millview and the trial court focused on this sentence without addressing the question of *when* the Corrected Order was adopted—the trigger for the statute of limitations.  They assume the Corrected Order was adopted as of the date of the letter, June 2, 2014.  But the letter explicitly states the Corrected Order "was adopted by the [Board] on May 20, 2014."  Read together, the letter informed Millview the Corrected Order was adopted on May 20, 2014, and reconsideration must be sought within 30 days—i.e., by June 19, 2014.  While Millview may dispute whether the Corrected Order was, in fact, adopted on May 20, 2014, it cannot reasonably contend the letter indicated the statute of limitations would run from June 2, 2014.  (Accord, *Jordan v. City of Sacramento* (2007) 148 Cal.App.4th 1487, 1496

15

["where the material facts are known to both parties and the pertinent provisions of law are equally accessible to them, a party's inaccurate statement of the law or failure to remind the other party about a statute of limitations cannot give rise to an estoppel"].)

Finally, we find *Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298 instructive. There, the California Supreme Court concluded, in part, tax notices sent to the plaintiff regarding her refund claim did not estop the county from relying on her failure to exhaust her administrative remedies. (*Id.* at p. 1318.) The court first explained estoppel " ' "must generally be a statement of *fact*" ' " and the plaintiff "does not identify any *fact* that was unknown to her; instead, she asserts she was ignorant of the *law* that required her to apply to the Assessment Appeals Board . . . before filing a refund action in court . . . ." (*Id.* at pp. 1315, 1316.) The court then noted the plaintiff was represented by counsel and, "In general, the law 'particularly' disfavors estoppels 'where the party attempting to raise the estoppel is represented by an attorney at law' " who is " 'charged with knowledge of the law in California.' " (*Id.* at p. 1316.) Finally, the court explained the notices at issue "were, at most, ambiguous and confusing . . . . It is true, as [the plaintiff] observes, that the March 2 notices, after advising that the County Auditor had rejected her refund claims, stated: 'Section 5141 of the State of California Revenue and Taxation Code allows you six months from the effective date of denial of your claim(s) to commence an action in the Superior Court to seek judicial review of this denial.' However, neither this statement, which simply advised [the plaintiff] of the applicable statute of limitations, nor anything else in the March 2 notices affirmatively represented that there were no other prerequisites to filing a court action or that [the plaintiff] had met all other prerequisites. At best, this is but one *possible* interpretation that *arguably could* be read into the accurate advisement regarding the applicable statute of limitations." (*Id.* at p. 1317.)

The circumstances and substance of the June 2, 2014 letter are insufficient to estop the Board from asserting a statute of limitations defense. Millview was represented by counsel, who had been involved in the administrative proceedings leading to the Order and Corrected Order. While Millview argues the Board "treated its transmission of the

16

decision on June 2, 2014 as its 'final action,' '' the language of the letter contradicts this position. The letter specifically states the Corrected Order was adopted on May 20, 2014 and the limitations period runs from the date of adoption. Nothing in the letter indicates a later adoption date for the Corrected Order. Unfortunately, Millview unilaterally determined, erroneously and to its ultimate detriment, the statute of limitations should run from the date of the June 2, 2014 letter.[8]

## III.  DISPOSITION

The judgment is reversed. The trial court is directed to vacate the writ issued and enter a new judgment denying Millview's petition for writ of mandate. The State Water Resources Control Board may recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

---

[8] Because we conclude Millview's petition is time-barred under section 1126(b) and the Board was not estopped from asserting this defense, we need not reach the substantive issues raised in the Board's appeal.

_____
MARGULIES, Acting P. J.

WE CONCUR:


_____
BANKE, J.


_____
SANCHEZ, J.


A146605
_Millview County Water District v. State Water Resources Control Board_

18

Trial Court:    Mendocino County Superior Court

Trial Judge:    Hon. James D. Garbolino

Counsel:

Kamala D. Harris, Attorney General, Robert W. Byrne, Assistant Attorney General, Annadel A. Almendras, William Jenkins and J. Kyle Nast, Deputy Attorneys General for Defendant and Appellant State Water Resources Control Board.

Neary and O'Brien and Christopher J. Neary for Plaintiff and Respondent Millview County Water District.

Bartkiewicz, Kronick & Shanahan, Alan B. Lilly, Andrew J. Ramos; Bruce Goldstein, County Counsel and Cory W. O'Donnell, Deputy County Counsel for Real Party in Interest and Respondent Sonoma County Water Agency.